UNITED STATES of America,
Plaintiff–Appellee,

v.

John Oliver HORNUNG, a/k/a John O.
Green, Defendant–Appellant.

No. 86–2191.

United States Court of Appeals,
Tenth Circuit.

June 6, 1988.

---

See also 785 F.2d 868.

Frances Smylie Brown, Asst. Federal Public Defender, Denver, Colo. (Carl Hughes and Michael McGuire, Hughes & Nelson, Oklahoma City, Okl., and John O. Green, pro se, on the briefs) for defendant-appellant.

D. Blair Watson, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, BARRETT and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

On November 6, 1985, defendant-appellant John Oliver Hornung, a/k/a John O. Green, was indicted by the grand jury of the Western District of Oklahoma. The indictment charged defendant with two counts of willfully and knowingly aiding and assisting in the preparation of a false

income tax return, in violation of 26 U.S.C. § 7206(2), one count of conspiring to defraud the United States by concealing taxable income, in violation of 18 U.S.C. § 371, and one count of perjury before a federal grand jury, in violation of 18 U.S.C. § 1623. A jury found defendant guilty of conspiracy and acquitted him on the remaining counts. The court sentenced him to a five-year term of imprisonment.

Retained counsel filed appellate briefs, but withdrew due to a conflict with defendant, who then filed a pro se supplemental brief. Appointed counsel represented defendant at oral argument. The issues[1] raised in the various briefs are 1) whether defendant should have been granted a new trial because of juror misconduct, 2) whether the district court impermissibly amended the indictment in its charge to the jury and 3) whether the court failed to comply with the Court Reporter's Act by providing an incomplete trial transcript. We affirm.

The evidence presented at trial focused primarily on the drug smuggling activities of two brothers, Robert Schaffer and Stanley Eugene Schaffer, and on the events which transpired after they were killed in a plane crash. Defendant, an attorney, prepared the Schaffers' income tax returns and represented them in the course of a criminal tax investigation. He also provided legal representation for the brothers' wives, Linda Schaffer and Donna Schaffer. Both women testified at trial on behalf of the government.

In 1982, Robert and Stanley Schaffer agreed to smuggle cocaine for Paul Gonzales, Jr. The venture involved the Schaffers flying a specially equipped plane to Columbia, South America, where they would pick up a quantity of cocaine and fly the drugs back to the United States. The initial run was made in August of 1982. Linda Schaffer testified that, in September of 1982, her husband had shown her a handwritten note in which defendant proposed that in exchange for ten percent of the anticipated $10,000,000 in proceeds from the smuggling venture, he would monitor drug enforcement and tax laws, investigate foreign banks and act as legal counsel for the group.

During the week of October 9, 1982, Robert and Linda Schaffer flew in their own plane from Oklahoma City, Oklahoma to Ft. Lauderdale, Florida. The following week, Robert and his brother were to fly from Florida to Nassau, where they would pick up an individual named Simon Frazier and the "dope plane" they would fly to Columbia. The cocaine was to be dropped by parachute over a farm in Mississippi. As planned, the Schaffers left Florida on October 16.

Two days later, Linda Schaffer was informed by Gonzales' father that the plane had crashed while the drugs were being unloaded. She immediately contacted defendant. Upon her arrival in Oklahoma City the following day, defendant told Linda that he had spoken to Gonzales and that the crash was not going to be reported. On October 21, defendant flew his helicopter to Mississippi. When he returned, he advised Linda and Donna Schaffer to file missing person reports with the Oklahoma City police. After accompanying Linda to file the report, defendant told her that he had flown with Gonzales to the crash site, where he had observed the partially burned bodies of Stanley Schaffer and Simon Frazier. Defendant explained that when they returned to the scene the following day, the two bodies had been removed and the area had been cleaned up. Parts of the plane were still visible, however, and they found Robert Schaffer's body strapped into the pilot's seat. Defendant removed a watch and keys from Robert's body, then buried it. He also removed some of the aircraft's identification numbers.

During late October and November, defendant, Gonzales and Donna and Linda Schaffer met on several occasions. They discussed setting up a trust, or alternative-

1. Appointed counsel advised the court at oral argument that one of the allegations in defendant's supplemental brief, that the trial judge should have disqualified himself, was being withdrawn and would be addressed in a habeas corpus motion filed pursuant to 28 U.S.C. § 2255.

ly, procuring an insurance policy issued from the Cayman Islands, as a way to "clean up" funds accumulated from drug smuggling. Linda also spoke with Gonzales concerning payment for her husband's role in the fatal flight. Gonzales gave her $384,000 in two installments. On both occasions, she discussed the payments with defendant, who expressed his opinion that the entire load of cocaine had been dropped prior to the crash and that consequently Gonzales owed her more money.

When Linda went to Florida after Thanksgiving to retrieve the plane owned by the Schaffers, she learned that the FBI was investigating their plane. She also learned of the discovery of the site in Mississippi where the "dope plane" had crashed. Linda contacted defendant, expressing concern that her house, in which a substantial amount of currency was hidden, would be searched. On December 3, 1982, they rented, in defendant's name as trustee for Linda Schaffer, a safety deposit box at the Southwestern Bank in Oklahoma City in which they placed over half a million dollars in cash.

Linda subsequently informed defendant that her father-in-law also had a substantial amount of currency hidden at his residence. On December 22, he delivered to defendant a suitcase containing approximately $500,000 in cash. Defendant, accompanied by his grandmother and Linda Schaffer, drove to the Oklahoma City National Bank, where they added Linda's name to his grandmother's two safety deposit boxes. Defendant placed the cash in the boxes.

On January 5, 1983, Linda Schaffer, represented by defendant, appeared before a federal grand jury. About a week later, defendant and Linda met to discuss the funds placed in the safety deposit boxes. Defendant stated that he was uncomfortable with the situation and wanted to take the money in the Southwestern Bank to Dallas, Texas. Defendant removed the cash, giving Linda over $40,000 and placing the remaining currency in a safety deposit box in Chandler, Oklahoma. When defendant delivered the $40,000 to Linda, he told

her that the funds in the Oklahoma City National Bank also should be moved out of the state. Linda refused to give him the keys to the two safety deposit boxes.

In late January, defendant left for Texas, eventually settling in Austin. He took with him a portion of the funds he had placed in the safety deposit box in Chandler. In May, he went back to Chandler and removed the remaining cash. Defendant returned to Austin, where he bought a home, as well as several vehicles and other personal property, and had his name legally changed. He lived in Austin until he was arrested there in August of 1985.

I.

Defendant first contends that the trial court should have granted his motion for a new trial premised in part on an improper third-party contact with a juror. He argues that the extraneous contact was so prejudicial, particularly in light of his acquittal on three of the counts charged, that it could not be considered harmless.

On May 16, 1986, two days after the completion of defendant's trial, government counsel received a telephone call from one of the jurors, Louis Curry. Curry related that during the trial, he had been involved in a conversation outside the courtroom concerning defendant and Stanley Schaffer. Counsel immediately informed the trial judge, who granted permission to secure an affidavit from Curry.

Curry indicated in his affidavit that while conducting some routine business at his bank in Norman, Oklahoma, he conversed with a bank officer, Mary Downing. In response to Downing's question concerning her inability to contact him about his certificate of deposit, Curry told her that he had been serving on a jury. Downing volunteered that she was familiar with defendant because he had come into "the bank with Gene Schaffer and [had] attempted to 'launder' $6,000.00." Rec. vol. I, doc. 192, ex. A at 2. She then related that defendant and Schaffer had attempted to purchase a cashier's check in that amount and that defendant became upset when Downing refused to issue the check. Curry further

indicated in his affidavit that the information imparted by Downing in the course of the one-minute conversation was unsolicited and that he discussed the conversation with a fellow juror, later identified as Stephen Detjen. *Id.* at 3–4.

On June 23, 1986, the trial court conducted a hearing "to determine whether possible juror misconduct occurred as alleged and, if so, whether it was prejudicial to the Defendant." Rec. vol. I, doc. 210 at 1. At the hearing, Curry was questioned about his conversation with the bank officer. A second hearing was held on July 8, at which time Detjen testified about the information related to him by Curry. In its order denying defendant's motion for a new trial, the court stated that when viewed in the light most favorable to defendant, "the communication was arguably about the matter before the jury" and would "be treated as 'presumptively prejudicial.'" *Id.* at 3. The court determined, however, that the presumption was rebutted by the "overwhelming evidence" of defendant's guilt. *Id.* at 5.

In *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), the Court stated that in a criminal case, any private communication or contact with a juror during a trial about a matter pending before the jury is deemed presumptively prejudicial. *See United States v. Day,* 830 F.2d 1099, 1103 (10th Cir.1987). The presumption of prejudice "is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Remmer v. United States,* 347 U.S. at 229, 74 S.Ct. at 451. The trial court has broad discretion in reviewing the

effect of extrajudicial information. *United States v. Day,* 830 F.2d at 1106; *United States v. Jones,* 707 F.2d 1169, 1173 (10th Cir.), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983).

Relying on what he purports to be the holding in *United States v. Greer,* 620 F.2d 1383 (10th Cir.1980), defendant contends that the presumption of prejudice is irrebuttable once the jury has reached its verdict. In *Greer,* a United States Deputy Marshal presented information to the jury concerning possible sentencing. The improper contact came to the trial court's attention after the verdict was entered and the defendant was sentenced. Following a hearing, the court determined that the contact was not prejudicial. *Id.* at 1384. Judge McKay, upon restating the rule set out in *Remmer,* concluded that the effect of the subsequent enactment of Fed.R. Evid. 606(b) [2] "is that a presumption of prejudice cannot be overcome once a jury has reached its verdict." *Id.* at 1385.

Although the majority of the panel deemed the improper contact so prejudicial that it constituted reversible error, both the concurring and dissenting judges rejected the notion that a "conclusive presumption" should be applied when an improper juror contact comes to light post-trial. *Id.* at 1386 (Doyle, J., concurring); *id.* at 1391 (Barrett, J., dissenting); *see* 3 D. Louisell & C. Mueller, Federal Evidence § 291 (Supp. 1987) (recognizing that conclusion that presumption is irrebuttable was not adopted by a majority of the panel). Thus, contrary to defendant's contention, *Greer* does not stand for the proposition that the presumption of prejudice is irrebuttable once the jury has reached its verdict.[3] The pre-

---

**2.** Fed.R.Evid. 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any

outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

**3.** The enactment of Fed.R.Evid. 606(b) did not effect prior law regarding the impeachment of jury verdicts. As recently stated by the Supreme Court, the rule "is grounded in the common-law rule against admission of jury testimony to impeach a verdict *and the exception for*

sumption is not conclusive, but rather can be overcome upon the government meeting its burden of establishing that the contact with the juror was harmless to the defendant. *Remmer v. United States*, 347 U.S. at 229, 74 S.Ct. at 451; *United States v. Day*, 830 F.2d at 1103.

 "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982) (addressing due process claim premised on juror bias). When a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of the prejudice, if any, to the defendant. *Id.* 102 S.Ct. at 217; *Remmer v. United States*, 347 U.S. at 229–30, 74 S.Ct. at 451. The court's questioning of a juror who is the recipient of extraneous information is limited to the circumstances and nature of the improper contact, as Fed.R.Evid. 606(b) precludes the court from delving into the subjective effect of the contact on the juror's decision-making. Accordingly, an objective test should be applied in making an assessment of whether the defendant was prejudiced by the extraneous information. *See United States v. Bruscino*, 687 F.2d

938, 940–41 (7th Cir.1982) (en banc), *cert. denied*, 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 468 (1983); *Miller v. United States*, 403 F.2d 77, 83 n. 11 (2d Cir.1968); *see also* 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 606[05] (1987). The court "should assess the 'possibility of prejudice' by reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware." *United States v. Weiss*, 752 F.2d 777, 783 (2d Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985).

██ In the instant case, the trial court properly conducted two hearings to determine the nature and possible prejudicial effect of the third-party contact. Applying the presumption of prejudice, the court determined that in light of the overwhelming evidence of defendant's guilt, the contact was harmless.[4] We agree with the district court that the information imparted to juror Curry pertained to the matters before the jury, particularly the count alleging a conspiracy to conceal taxable income, and deem the contact to be presumptively prejudicial. Upon a careful review of the entire record, we further agree with the district court that the presumption is overcome by the overwhelming evidence of defendant's guilt on the conspiracy count.

---

*juror testimony relating to extraneous influences." Tanner v. United States*, — U.S. —, 107 S.Ct. 2739, 2748, 97 L.Ed.2d 90 (1987) (emphasis added); *see United States v. Greer*, 620 F.2d at 1391 (Barrett, J., dissenting) (expressing view that enactment of the rule did not constitute a "radical departure" from previous case law); *see also United States v. Miller*, 806 F.2d 223, 225 n. 2 (10th Cir.1986).

Under the rule, a juror may not testify regarding the subjective effect of extraneous information. It does not preclude, however, testimony as to the objective nature of the contact, and likewise does not preclude a finding by the trial court that the contact was harmless. "Since a juror may not testify as to how any extraneous material affected his decision, once the introduction of extraneous material has been established, a presumption of prejudice becomes operative which can be overcome by showing that the error was harmless." 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 606[05] (1987); *see United States v. Weiss*, 752 F.2d 777, 783 (2d Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985); *United States v. Fleming*,

594 F.2d 598, 608 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979).

**4.** The district court was cognizant of the limitations on its questioning of the two jurors. In denying defendant's motion for a new trial, the court recognized that it had "inappropriately inquired into the thought process of Juror Detjen" in contravention of Fed.R.Evid. 606(b). Rec. vol. I, doc. 210 at 6 n. 2. The court stated that "[t]he responses were not considered in arriving at" its conclusion. *Id.*

Similarly, in concluding that the juror contact was harmless to defendant, we have not considered either the answers elicited from juror Detjen at the second hearing or the statements in Curry's affidavit which arguably address his subjective perceptions of the pertinence to defendant's trial of his conversation with the bank officer. *See United States v. Greer*, 620 F.2d at 1389 n. 3 (Barrett, J., dissenting); *United States v. Williams*, 613 F.2d 573, 575–76 (5th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980).

The evidence conclusively establishes that defendant knew the source of the funds in the safety deposit boxes and that he placed the currency in the boxes to conceal it from the government. We hold that the extraneous contact was harmless to defendant, and therefore conclude that the district court did not err in denying defendant's motion for a new trial.

## II.

Defendant next contends that the district court's instruction on the conspiracy count constituted an impermissible constructive amendment of the indictment.

Count III of the indictment charged that during the period of October, 1982 through January 27, 1983, defendant conspired with Linda Schaffer to defraud the United States by obstructing the Internal Revenue Service in the ascertainment, computation, assessment and collection of the personal income taxes of Robert, Linda and Stanley Gene Schaffer for the years 1978 through 1982. Rec. vol. I, doc. 1 at 3. The pertinent portion of the instruction to which defendant objects is as follows:

> [I]t is not needful that the government prove that the conspiracy charged involved the personal income taxes of Robert A. and Linda Schaffer and Stanley Gene Schaffer for each of the years alleged. The government must, however, prove beyond a reasonable doubt that the conspiracy charged involved the personal income taxes of Robert A. and Linda and Stanley Gene Schaffer for at least one of the years alleged, those years being 1978 through 1982. You are further instructed that the court has determined as a matter of law that there is insufficient evidence to support a finding of conspiracy as to the personal income taxes of Robert A. and Linda Schaffer and Stanley Gene Schaffer for the tax year 1981.

Rec. vol. I, doc. 181 at 38–39. Changing the indictment from the conjunctive to the disjunctive with regard to the years in which the taxable income was allegedly accrued,[5] defendant argues, was a material amendment of the indictment resulting in prejudicial error. Defendant also argues that by omitting the year 1981 because of insufficient evidence, the court in effect acquitted him for that year and impliedly instructed the jury to find him guilty for the remaining years.

A constructive amendment of an indictment "occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986). This court has consistently stated, however, that withdrawing a part of the charge from jury consideration does not work an amendment if nothing is thereby added to the indictment and the remaining allegations charge an offense. *United States v. Whitman*, 665 F.2d 313, 316 (10th Cir.1981); *United States v. Burns*, 624 F.2d 95, 104–05 (10th Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *United States v. Griffin*, 463 F.2d 177, 178 (10th Cir.), *cert. denied*, 409 U.S. 988, 93 S.Ct. 344, 34 L.Ed.2d 254 (1972).

In deleting the year 1981 in its instruction on the conspiracy charge, the district court did not impermissibly amend the indictment. *See United States v. Gunter*, 546 F.2d 861, 868–69 (10th Cir.1976), *cert. denied*, 431 U.S. 920, 97 S.Ct. 2189, 53 L.Ed.2d 232 (1977). The essence of the conspiracy count was an illicit agreement between defendant and Linda Schaffer to conceal, between October of 1982 and January of 1983, taxable income of the Schaf-

---

5. The district court, in its order denying defendant's motion for a new trial, explained that it had "instructed [the jury] in the disjunctive, which in effect made the Defendant guilty of conspiracy if acts occurred in 1978 or 1979 or 1980 or 1982," while the indictment charged defendant "in the conjunctive," accusing defendant "of conspiracy if acts occurred from 1978 through 1982." Rec. vol. I, doc. 210 at 6–7. The court concluded that "[t]he years involved here are the same whether addressed in the conjunctive or the disjunctive, except for the omission of 1981." *Id.* at 7.

fers for the years 1978 through 1982. In which of those years the taxable income was accrued was not material to the conspiracy charge, and the trial court so instructed the jury. The deletion of the year 1981 clearly did not change the meaning of the charge from that presented to the grand jury or alter the government's theory of the case, and did not result in any prejudice to defendant. *See United States v. Cook,* 745 F.2d 1311, 1316–17 (10th Cir. 1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985).

▆▆ Defendant's argument that the trial court in effect acquitted him for the year 1981 and impliedly instructed the jury to convict him for the remaining years likewise is unavailing. His argument disregards the essential element of the conspiracy count, which was an agreement to conceal taxable income. It is on that basis that defendant stands convicted, not on a finding by the jury of a specific time frame in which the income was accrued. The trial court properly instructed the jury on the conspiracy count.

### III.

Defendant's final allegation of error, raised in his pro se supplemental brief, is that the trial court failed to comply with the Court Reporter's Act, 28 U.S.C. § 753, by not providing a complete trial transcript. Such failure, he argues, resulted in the unavailability of material and crucial portions of the transcript for preparation of an appellate brief and for this court's review of the proceedings below.

▆▆ This court has been provided a complete record of the proceedings below. This is not a case in which the absence of a complete trial transcript has made it impossible to determine whether prejudicial error was committed. *See, e.g., Edwards v. United States,* 374 F.2d 24, 26 (10th Cir. 1966), *cert. denied,* 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1967); *Parrott v. United States,* 314 F.2d 46, 47 (10th Cir.1963). We have carefully examined the entire record, including those portions apparently unavailable to retained appellate counsel, and have found no prejudicial error. Any

problems with the transcription of defendant's trial have been resolved, rendering his contention that the trial court provided an incomplete record meritless.

AFFIRMED.