Tony D. SISNEROS, Petitioner,

v.

CITY OF LARAMIE, Respondent.

No. 88–303.

Supreme Court of Wyoming.

May 15, 1989.

Lisa C. Sweeney, Laramie, for petitioner.

Bruce B. Waters of Smith, Stanfield & Scott, Laramie, for respondent.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

We granted certiorari in this case to review petitioner Tony D. Sisneros' contention that juror coercion denied him a fair jury trial on charges of driving while under the influence of alcohol. He seeks reversal of the municipal court's denial of his motion for a new trial, which denial was later affirmed by the district court on appeal. We affirm the decision of the district court.

On September 1, 1987, respondent City of Laramie (City) charged Sisneros with driving while under the influence in violation of the Municipal Code of the City of Laramie § 10.24.010 (1984). He was tried by a jury on March 3, 1988. The trial lasted one full day, and after each party had presented its case, the jury was instructed and retired to deliberate.

After the jury deliberated for some time, the jury foreperson, a Mr. Gruman, left the jury room and contacted the bailiff, telling her the jury had a question for the trial court. The trial court allowed the jury to return to the courtroom where they inquired what evidentiary weight they should attribute to the field sobriety tests the police gave to Sisneros when he was arrested. The trial court told the jurors that they would have to make that determination for themselves, and they returned to the jury room for more deliberation.

After another hour of deliberation, Mr. Gruman again left the jury room, found the bailiff, and told her the jury was deadlocked. At this time only one juror, Ms. Barela, had voted not to convict. The bailiff told Mr. Gruman to return to the jury room.[1] The bailiff then informed the trial court of Mr. Gruman's comments. The trial court contacted both parties' counsel and discussed giving the jury further instructions.

Simultaneously, Mr. Gruman returned to the jury room and made a statement to his fellow jurors about his impression of what the bailiff had told him. Further deliberation ensued, and after about twenty minutes, Ms. Barela changed her vote to guilty. The jury informed the trial court it had reached a verdict and the trial court called them into the courtroom where they returned a verdict of guilty. After the verdict was announced, the defense polled the jury and each member, including Ms. Barela, confirmed a finding of guilty.

The next day Ms. Barela contacted the trial court and said that she had rendered a guilty verdict even though she still had reservations whether Sisneros was guilty beyond a reasonable doubt. In response, the trial court held an investigatory hearing March 7, 1988, at which Ms. Barela testified concerning the events of the previous day. The trial court heard this evi-

---

1. At the second post-verdict investigatory hearing the bailiff testified that after Mr. Gruman told her the jury might be deadlocked she responded: "Fine, would [he] please go back into the jury room." She also told him she "would contact the judge." At the same hearing, Mr.

Gruman testified that after he emerged from the jury room and told the bailiff the jury was deadlocked, the bailiff told him "Don't say another word, just go back in until we contact you."

dence and denied Sisneros' W.R.Cr.P. 34 motion for a new trial.

Sisneros filed an appeal from the trial court's decision on May 26, 1988, in the district court. On June 13, 1988, the district court entered an Order for Remand and Investigation of Jury. This order found that Ms. Barela and other jurors were competent to testify on the matter under W.R.E. 606(b) and instructed the trial court to take testimony from Mr. Gruman, Ms. Barela, and the bailiff and city court clerk.

On remand, the original trial court judge recused himself and was replaced by another municipal judge. The trial court held the post-verdict investigatory hearing on June 28, 1988, and the bailiff, Ms. Barela, and Mr. Gruman testified about what happened the day of Sisneros' trial. During this hearing, Sisneros' counsel lodged a curious W.R.E. 606(b) objection to the trial court's questions to Mr. Gruman concerning his perceptions of what transpired in the jury room after the bailiff instructed him to return there while she notified the trial court that the jury was deadlocked. The trial court overruled this objection, noting that Sisneros was the party who had instigated an investigation into what transpired in the jury room in the first place. After the hearing, the trial court found that the bailiff's instruction to Mr. Gruman to return to the jury room was not improper. It then went on to find that statements Mr. Gruman made upon returning to the jury room were improper or prejudicial, but that they did not warrant a new trial. The trial court filed a written order on June 29, 1988, denying Sisneros' second motion for a new trial.

Sisneros appealed that decision to the district court, which affirmed. Sisneros appealed the district court affirmance to this court; this court denied the appeal due to a jurisdictional defect. After that denial Sisneros filed a petition for writ of certiorari asking this court to grant review of the case on that basis. The writ was granted.

We review Sisneros' claim for relief from the trial court's denial of his W.R.Cr.P. 34 motion for a new trial under the abuse of discretion standard. Applied in *Hoskins v. State*, 552 P.2d 342, 351 (Wyo.1976), cert. denied, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). See also *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986) (defining judicial discretion). Accord *United States v. Bruscino*, 687 F.2d 938, 940–41 (7th Cir.1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 468 (1983) (discussing same standard of review for F.R.C.P. 33, which contains similar language); and *Braley v. State*, 741 P.2d 1061, 1066 (Wyo.1987). A corollary concern in this case is the one raised by Sisneros' counsel in the post-verdict investigatory hearing: What evidence of juror conduct was admissible in the post-trial investigation under W.R.E. 606(b)? Our review of this issue bears ultimately on the determination whether the trial court abused its discretion when it denied Sisneros' motion for a new trial.

A criminal defendant has a constitutional right to be fairly tried by an impartial jury. The United States Supreme Court recognized this in *Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), a case in which a conviction for second-degree murder was reversed on review of the denial of post-conviction relief because the bailiff had expressed an opinion that the defendant was guilty to one of the deliberating jurors. *Id.*, 385 U.S. at 366, 87 S.Ct. at 471, 17 L.Ed.2d at 423. See also cases collected at Annotation, *Communication Between Court Officials or Attendants and Jurors in Criminal Trial as Ground for Mistrial or Reversal—Post–Parker Cases*, 35 A.L.R.4th 890 (1985). In the federal courts, an allegation of extraneous influence on a juror raises a rebuttable presumption of prejudice, which must be addressed in a post-verdict investigation. See, e.g., *United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir.1988), cert. denied sub. nom. *Green v. United States*, —— U.S. ——, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989) (citing *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656 (1954)).

The United States Supreme Court also recognized that examination of jurors at a

post-verdict investigatory hearing needed to be carefully controlled. Jurors need to be confident that they will not be subjected to post-verdict harassment each time they render a verdict. See *Hornung,* 848 F.2d at 1045; and *Braley,* 741 P.2d at 1066. To protect a defendant's need to have an avenue for exposing a jury verdict that may have been the product of improper outside influence and to protect jurors from undue post-verdict harassment, the Court adopted F.R.E. 606(b) in 1975.[2] This court promulgated a nearly identical W.R.E. 606(b) in 1978; that rule controls these situations in Wyoming. Under W.R.E. 606(b):

> *Inquiry into validity of verdict or indictment.*—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying he received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.[3]

Federal courts review trial court investigations of alleged jury misconduct by applying F.R.E. 606(b) *objectively* so that evidence of juror deliberations is excluded unless there is a proper threshold finding that extraneous prejudicial information or outside influence was somehow improperly brought to bear upon the deliberating jurors. For example, recently in *Hornung,* 848 F.2d at 1045, after determining that a post-verdict investigatory hearing was war-

ranted, the Tenth Circuit Court of Appeals stated:

> "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78, [85] (1982) (addressing due process claim premised on juror bias). When a trial court is apprised of the fact that extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of the prejudice, if any, to the defendant. *The court's questioning of a juror who is the recipient of extraneous information is limited to the circumstances and nature of the improper contact, as Fed.R.Evid. 606(b) precludes the court from delving into the subjective effect of the contact on the juror's decision-making. Accordingly, an objective test should be applied in making an assessment. of whether the defendant was prejudiced by the extraneous information. The court "should assess the 'possibility of prejudice' by reviewing the entire record, analyzing the substance of the extrinsic evidence and comparing it to that information of which the jurors were properly aware."* United States v. Weiss, 752 F.2d 777, 783 (2d Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985).

(Emphasis added; some citations omitted). We essentially adopted this standard for W.R.E. 606(b) in *Braley,* 741 P.2d at 1066, relying on numerous federal cases cited therein. See also *Lessard v. State,* 719 P.2d 227, 232–33 (Wyo.1986).

▆▆▆ Properly applied, F.R.E. 606(b) *can* operate to prohibit testimony concerning "certain conduct by the jurors which has no verifiable outward manifestations." J. Berger and M. Weinstein, supra,

---

2. For a recount of House of Representatives Advisory Committee debate on F.R.E. 606(b) before it was promulgated by the Court, see J. Weinstein and M. Berger, Weinstein's Evidence, ¶ 606[08] at 606–87 (1988).

3. This rule is identical to F.R.E. 606(b) (1987), except that it contains an additional phrase which was present in F.R.E. 606(b) (1974), concerning the use of a juror's affidavit; also, F.R.E. 606(b) (1987) is gender neutral. See J. Weinstein and M. Berger, Weinstein's Evidence, ¶ 606[08] at 606–87 (1988).

¶ 606[04] at 606–33. One example of this is the rule's exclusion of testimony concerning jurors' own perceptions that they would be forced to deliberate until an agreement was reached. *United States v. Weiner*, 578 F.2d 757, 764 (9th Cir.), cert. denied, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978) (guilty verdict could not be impeached by testimony from juror who allegedly voted guilty, with reservation, but confirmed a guilty vote when polled).

 Applying W.R.E. 606(b) objectively to the evidence presented at the Sisneros' second post-verdict investigatory hearing, we can only conclude that much of the testimony Sisneros now relies on concerning what Mr. Gruman said after the bailiff told him to go back into the jury room, and any juror conversations after he did return, was inadmissible evidence under W.R.E. 606(b). Both parties to this appeal agree that the only extraneous information or outside influence that could have affected this jury was the bailiff's instruction to Mr. Gruman that he should return to the jury room. At the conclusion of the second post-verdict investigatory hearing, the trial court found that the bailiff's statement was not prejudicial or improperly brought to bear upon the deliberating jury. It did not establish a judicial basis under the language of W.R.E. 606(b) for the trial court to delve deeper into the actual deliberations of a wavering juror. *Braley*, 741 P.2d at 1066. Consequently, considering the entire record, we find Mr. Gruman's testimony of what he said after he returned to the jury room as instructed by the bailiff, and Ms. Barela's testimony concerning the effect his comments may have had on her deliberation, did not constitute evidence the trial court could use to render a decision on the motion for new trial once it found the bailiff's contact to be proper under W.R.E. 606(b).

With this in mind, we conclude that the trial court did not abuse its discretion when it denied Sisneros' motion for a new trial. Even though the trial court may have actually considered those inadmissible statements of Mr. Gruman and Ms. Barela concerning actual jury deliberations in Mr. Sisneros' trial, it still ruled that a new trial was not justified. In this posture, having determined the trial court may have considered more than it should have, we certainly cannot find any abuse of trial court discretion in the denial of Sisneros' motion for a new trial under the *Martin* standard.

Affirmed.