**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIE RAY PEWITTE,

Defendant - Appellant.

No. 98-3002

(D. Kansas)

(D.C. No. 96-CR-40078)

### ORDER AND JUDGMENT  *

Before **ANDERSON** , **KELLY** , and **LUCERO** , Circuit Judges.

Willie Ray Pewitte appeals his conviction by a jury on one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  We affirm.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

## BACKGROUND

On October 9, 1996, Junction City, Kansas, narcotics detective Patricia Giordano swore out an affidavit describing two controlled purchases of cocaine by a confidential informant from Mr. Pewitte.  The purchases took place in an apartment at 128 East Seventh Street in Junction City.  The affiant sought a warrant to search "128 EAST 7TH #1, THE FIRST APARTMENT DOOR ON THE WEST SIDE AS YOU ENTER THE APARTMENT BUILDING, AND 128 EAST 7TH ST., APARTMENT LOCATED ON THE SECOND FLOOR, EAST SIDE OF THE BUILDING."  R. Vol. I, Tab 23 at Ex. A.  A judge issued a search warrant authorizing the search of "128-1 EAST 7TH STREET (WEST APARTMENT GROUND LEVEL)."     Id. at Ex. B. [1]

Officer Giordiano, along with officers Joseph Espy, Mike Life, and Robert Story, arrived at the apartment building just before 8:00 a.m. on October 10.  Without announcing their presence or knocking on the door, the officers forcefully opened the door leading to Mr. Pewitte's first floor apartment.  They found Mr. Pewitte asleep on the floor a few feet inside the door.  An officer gave Mr. Pewitte a   Miranda  warning.  Detective Story asked for and received Mr.

---

[1]A second search warrant authorized the search of a second floor apartment. That search warrant was not made a part of the record in Mr. Pewitte's suppression hearing.

Pewitte's permission to search the vacant apartments in the building and Mr. Pewitte's automobile. R. Vol. IV, Tab 79 at 95-96.

The officers discovered in Mr. Pewitte's apartment a set of digital scales, on which cocaine residue was subsequently found, $951.00 in cash, some razor blades, a bill from a cable company, and other miscellaneous documents. While Mr. Pewitte's apartment was searched, other officers searched the second floor apartment rented by Wayne Boyd, in which Mr. Boyd's girlfriend, Diane King, was asleep. In Mr. Boyd's apartment officers discovered a smoking device made from an antenna, on which cocaine residue was subsequently found, plastic baggies with the corners missing, [2] a package of rolling papers, a bill addressed to Mr. Boyd, and a lease document listing Mr. Pewitte as the landlord and Mr. Boyd as the tenant for Mr. Boyd's apartment. The officers found several pieces of wire mesh used for smoking cocaine in Ms. King's purse. She was arrested after the discovery of that drug paraphernalia.

While the search of Mr. Boyd's apartment continued, officers picked up Mr. Boyd from his place of employment and took him to the police station for questioning. Detective Story told Mr. Boyd that his apartment had been searched, that Ms. King had been arrested, that cocaine residue and drug paraphernalia had

---

[2]Detective Life testified that plastic baggies with missing corners indicated that cocaine had been packaged. R. Vol. III at 25.

been found in his apartment, and that the police were particularly interested in Mr. Pewitte. They advised Mr. Boyd that if he would provide information about Mr. Pewitte, the officers would recommend probation for Ms. King.

After talking to Mr. Boyd, the officers again searched a vacant apartment on the second floor. During this second search, officers discovered a black bag containing a quantity of crack cocaine. Officers used a small key found on Mr. Pewitte's car key chain to open the lock on the bag. Fingerprints on the plastic bags containing the cocaine matched Mr. Pewitte's fingerprints.

Pursuant to Mr. Pewitte's consent, officers also searched an 80's model Cadillac registered to Mr. Pewitte's grandmother. No drugs were found in the car. The car was seized and forfeited to the Junction City Police Department.

Mr. Pewitte filed a motion to suppress all evidence seized pursuant to the search warrant, which was denied. He was convicted following a two-day trial.

On appeal, he argues the district court erred in: (1) failing to suppress evidence seized as a result of a search warrant which did not authorize the "no-knock" entry which occurred; (2) failing to suppress evidence seized as a result of a search warrant lacking in probable cause and particularity; (3) failing to require the government to disclose the identity of the confidential informant; and (4) refusing to grant a new trial based on governmental conduct allegedly constituting extrajudicial contact with jurors.

## DISCUSSION

We review the denial of a motion to suppress under familiar standards. "We accept the district court's factual findings unless those findings are clearly erroneous, and we consider the totality of the circumstances and view the evidence in a light most favorable to the government." United States v. Gama-Bastidas , 142 F.3d 1233, 1237 (10th Cir. 1998). We review de novo the ultimate determination of reasonableness under the Fourth Amendment. United States v. Maden , 64 F.3d 1505, 1508 (10th Cir. 1995). We review for an abuse of discretion the refusal to require disclosure of a confidential informant's identity and the denial of a new trial because of improper contact with the jury. United States v. Leahy , 47 F.3d 396, 398 (10th Cir. 1995) (informant's identity); United States v. Davis , 60 F.3d 1479, 1482 (10th Cir. 1995) (new trial).

### A. "No-Knock" Entry

The Supreme Court has held that "the common-law knock-and-announce principle forms a part of the Fourth Amendment reasonableness inquiry." Wilson v. Arkansas , 514 U.S. 927, 930 (1995). A recognized exception to this principle permits "no-knock" entries when justified by exigent circumstances. "In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances,

would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin , 520 U.S. 385, ___, 117 S. Ct. 1416, 1421 (1997). [3] The question whether exigent circumstances justify a "no-knock" entry is a mixed question of law and fact. United States v. Dahlman , 13 F.3d 1391, 1398 (10th Cir. 1993). We review for clear error the trial court's factual findings, but the ultimate determination of exigency we review de novo. Id.

The government argues there were the following exigent circumstances known to the police officers executing the warrant in this case: Detective Story testified that "information . . . circulated through the confidential informants and different sources on the street that [Mr. Pewitte] always had guns," R. Vol. II, Tab 77 at 13; and, in 1991, during a controlled buy of narcotics from Mr. Pewitte, officers heard him say through a monitoring device that he had guns just like the police and "that he wasn't scared about shooting the police and that he would do that." Id. Mr. Pewitte responds that officers have never in fact found weapons in

---

[3]Although Mr. Pewitte cites the federal "knock and announce" statute, 18 U.S.C. § 3109, we have held that "§ 3109 does not apply to state investigations by state officers." United States v. Moland , 996 F.2d 259, 261 (10th Cir. 1993). Thus, while § 3109 does not apply of its own force to state officers executing state warrants, the Supreme Court in Wilson made clear that the common-law "knock and announce" principle underlying the federal statute is incorporated in the Fourth Amendment's reasonableness inquiry. Accordingly, we examine the propriety of the "no-knock" entry in this case under the Fourth Amendment.

his possession, and his statements in 1991 were "mere puffery." Appellant's Br. at 11. Thus, he argues no exigent circumstances justified the "no-knock" entry.

We affirm the district court's denial of Mr. Pewitte's motion to suppress based on the "no-knock" entry. Our review of the record convinces us that the police conduct was justified. Police officers had heard Mr. Pewitte previously indicate a willingness to shoot officers and they heard from confidential informants that he carried weapons. We and other courts have previously held that comparable information justifies a "no-knock" entry. See Dahlman, 13 F.3d at 1398 (among circumstances justifying "no-knock" entry was information from an informant that the defendant "intended to shoot it out with police"); see also United States v. Kennedy, 32 F.3d 876, 882-83 (4th Cir. 1994) (among circumstances justifying non-compliance with knock and announce statute was defendant's threat to "kill[] a cop"); United States v. Spinelli, 848 F.2d 26, 29-30 (2nd Cir. 1988) (among circumstances justifying non-compliance with knock and announce statute was defendant's "reputation for violence"); cf. United States v. Myers, 106 F.3d 936, 940 (10th Cir.) (among circumstances justifying use of flash-bang device ten seconds after knocking on door was officers' awareness that defendant had previously been involved in a firebombing incident), cert. denied, 117 S. Ct. 2446 (1997). We discern no Fourth Amendment violation in the execution of the "no-knock" entry in the particular circumstances of this case.

**B. Sufficiency of the Affidavit**

Mr. Pewitte argues the affidavit provided as the basis for the search warrant failed to establish probable cause to believe that contraband would be found in Mr. Pewitte's apartment. "In determining whether probable cause exists to issue a warrant, the issuing judge must decide whether, given the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Simpson, 152 F.3d 1241, 1246 (10th Cir. 1998) (quoting United States v. Janus Indus., 48 F.3d 1548, 1552 (10th Cir. 1995)). A judge's determination of probable cause is afforded great deference, and we "will uphold it as long as the judge had a substantial basis for finding that probable cause existed." Id.

As Mr. Pewitte argues, the primary information in the affidavit was a description of two controlled buys of cocaine by a confidential informant from Mr. Pewitte, aka "Sugar Ray." Mr. Pewitte argues the affidavit failed to establish probable cause because it contained no information about the credibility and reliability of the informant, nor any independent verification of the informant's statements, such as records from a monitoring device. He also argues the affidavit failed to establish probable cause to believe that contraband would be found on the date the warrant was issued.

We have observed that "[t]he issuing judge's task is to make a common sense decision whether the totality of the evidence supports the conclusion there is a fair probability that contraband or evidence of a crime will be found." Lawmaster v. Ward, 125 F.3d 1341, 1348 (10th Cir. 1997). In Lawmaster, we upheld the sufficiency of an affidavit "relating the informant's detailed, eye-witness account of the alleged illegal activity." Id. Similarly, the affidavit here described in detail the informant's eye-witness account of the drug buys. An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the] tip to greater weight than might otherwise be the case." Illinois v. Gates, 462 U.S. 213, 234 (1983); see also Kaiser v. Lief, 874 F.2d 732, 734 (10th Cir. 1989) (holding affidavit sufficiently established confidential informant's credibility where the "informant's knowledge of the events described in the affidavit was first-hand" and the substance the informant obtained was in fact cocaine). Moreover, the affiant and other officers watched the informant enter and exit the building where the controlled buys occurred. That provided additional corroboration of the informant's reliability. See United States v. Richardson, 86 F.3d 1537, 1545 (10th Cir. 1996) (holding that affidavit established probable cause where the "informant's tip was corroborated by a controlled narcotics purchase and the observation of [the defendant's] residence").

We also reject Mr. Pewitte's argument that the warrant was unsupported by probable cause to believe that contraband would be found on the date the warrant was issued. The affidavit described two controlled buys from Mr. Pewitte, one the day before the warrant was issued and the other three days before. On each occasion Mr. Pewitte readily provided more than a gram of cocaine to the informant. That provided probable cause to believe that contraband would be found when the warrant was issued.

We therefore hold, according the appropriate deference to the issuing judge's determination, that the warrant was supported by probable cause. [4]

## C. Confidential Informant's Identity

Mr. Pewitte next argues the district court erred in denying his request to reveal the confidential informant's identity. As indicated, we review that denial for an abuse of discretion. Leahy, 47 F.3d at 398.

The decision whether to disclose a confidential informant's identity involves "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro v. United States,

---

[4]As the government observes, Mr. Pewitte fails to develop his argument that the warrant lacked particularity. We therefore consider the issue abandoned. At oral argument of this case, Mr. Pewitte's counsel conceded abandonment.

353 U.S. 53, 62 (1957). We have stated as follows concerning the necessity to make such a disclosure:

> A defendant may obtain the identity and whereabouts of an informer if his testimony might be relevant to the defendant's case and justice would be best served by disclosure. Disclosure is not required if the CI did not participate in the illegal activity or when information sought is cumulative. A CI's testimony must be shown to be valuable to a defendant; mere speculation is not enough.

Leahy, 47 F.3d at 398 (quotations and citations omitted).

Mr. Pewitte was not charged with any activity involving the controlled buys by the informant. He was charged and convicted based on evidence found during the search of his apartment and the apartment where the cocaine was found in a bag to which he had the key. The confidential informant had no relevant information about that charge or that evidence. We therefore conclude the district court did not abuse its discretion in failing to disclose the identity of the confidential informant.

### D. Failure to Grant a New Trial

As indicated, police officials confiscated Mr. Pewitte's Cadillac, which was subsequently forfeited by Mr. Pewitte and used by the police in their "D.A.R.E." program.[5] The personalized "Sugar Ray" (Mr. Pewitte's nickname) tag on the

---

[5]"D.A.R.E." stands for Drug Abuse Resistance Education, a program conducted by local police agencies in schools throughout the country.

front of the car was removed, and the police painted flames on the car, attached "D.A.R.E." stickers to it, and inscribed on it the following: "Seized from a local drug dealer by Junction City Police Department." The car was featured and promoted in the "D.A.R.E." program and in local newspapers and at exhibitions. The car was parked near the courthouse during Mr. Pewitte's trial, although the parties dispute whether jurors were able to see the vehicle.

Mr. Pewitte filed a variety of motions relating to the vehicle, including motions for a gag order, a change of venue and to dismiss, all of which were denied. Following his guilty verdict, Mr. Pewitte filed a motion for judgment of acquittal or for a new trial, on the ground that the jury had been improperly influenced by exposure to the vehicle. The district court found that the "vehicle was parked within the visitor's parking lot of the federal courthouse during at least one day of the trial" and that it "was also observed being driven in the downtown Topeka area during the lunch hour of August 19, 1997 [the second day of trial]." United States v. Pewitte, 985 F. Supp. 1254, 1256 (D. Kan. 1997).

As the district court noted, the issue is "whether any exposure to the extraneous information impermissibly tainted the jurors so as to warrant a new trial." Davis, 60 F.3d at 1484. "A rebuttable presumption of prejudice arises whenever a jury is exposed to external information in contravention of a district court's instructions." Mayhue v. St. Francis Hosp. of Wichita, Inc., 969 F.2d 919,

- 12 -

922 (10th Cir. 1992). The government bears the burden of establishing the harmlessness of any such contact with the jury. See United States v. Hornung, 848 F.2d 1040, 1044 (10th Cir. 1988). Further, we must be satisfied that the exposure was "harmless beyond a reasonable doubt." Davis, 60 F.3d at 1485. We have stated that "the most common means of demonstrating the harmlessness of an extraneous contact is to show the existence of 'overwhelming evidence of [the] defendant's guilt.'" Id. (quoting Hornung, 848 F.2d at 1045).

Instead of holding an evidentiary hearing to determine the disputed issue of whether jurors were, in fact, exposed to extraneous information concerning the vehicle, the court assumed "that some or all of the jurors did indeed see the D.A.R.E. vehicle." Pewitte, 985 F. Supp. at 1256. As the district court also noted, photographs of the vehicle, post-forfeiture, with its "D.A.R.E." regalia, were shown to the jury. The district court found any prejudice occasioned by any additional extraneous exposure to the vehicle to be harmless beyond a reasonable doubt because of the "overwhelming evidence of [Mr. Pewitte's] culpability," id. at 1257, which it detailed as follows:

> The evidence showed that the key to the bag containing the subject crack cocaine was on the defendant's keyring, that the cocaine was in a room to which the defendant had access, and that digital scales that bore cocaine residue were in the defendant's apartment near a large amount of cash. Additionally, a cooperating witness admitted he helped the defendant package and store cocaine in his residence. The witness also testified that he obtained cocaine from the defendant.

- 13 -

Id. at 1256-57.  The court therefore denied Mr. Pewitte's motion for a new trial.

We review that denial for an abuse of discretion.    Davis , 60 F.3d at 1482.
While we do not condone the government's conduct, which, if true, is less than
exemplary, we find no abuse of discretion in the district court's denial of the
motion for a new trial, in light of the court's review of the evidence against Mr.
Pewitte, and its correct conclusion of harmlessness.  We therefore affirm the
denial of Mr. Pewitte's motion for a new trial.

AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge