**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dan W. THOMPSON,
Defendant–Appellant.**

**No. 89–6180.**

United States Court of Appeals,
Tenth Circuit.

July 13, 1990.

Order on Rehearing Oct. 10, 1990.

McKAY, Circuit Judge.

This case involves an appeal from the district court's denial of defendant's motion for a new trial.

## I. FACTS

Defendant is one of three co-defendants who allegedly defrauded the government in real estate purchases financed with mortgages insured by the Federal Housing Administration. These defendants were found guilty by jury verdict and were subsequently sentenced to twenty-eight concurrent, two-year prison sentences.

After this case was submitted to the jury—but before any jury verdict—a newspaper article about the case was published in the business section of the Saturday Oklahoman & Times.[1] The article discussed a previous agreement to plead guilty signed by defendant Thompson. The guilty plea was withdrawn before trial and was not admissible in the trial court because the defendant's motion in limine, to exclude any mention of plea negotiations, had been granted. On Monday, before the jury reconvened, defendant's counsel requested that the jury be individually voir dired to determine whether any of the jurors had been exposed to the article. The written motion contained allegations that two jurors had been observed reading the Daily Oklahoman at the courthouse during the week of trial. One other juror was observed reading the Wall Street Journal throughout the week of trial. Therefore, it was assumed that he would be likely to read the business section of the Saturday Oklahoman & Times. On Monday after the article was published, the trial court inquired whether anything had occurred during the weekend that might affect the jurors' ability to be fair and impartial. But, unlike earlier occasions, the court refused to ask the more specific question whether the jurors had read anything about the case. When no juror responded to the court's inquiries, the trial judge allowed them to continue deliberations. After al-

Gary E. Payne, Oklahoma City, Okl., for defendant-appellant.

William S. Price, U.S. Atty., W.D.Okl., and Thomas M. Gannon, Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before McKAY, SEYMOUR, and MOORE, Circuit Judges.

1. The Saturday Oklahoman & Times is the Saturday version of the Daily Oklahoman. The Daily Oklahoman is the major daily newspaper in Oklahoma City.

lowing defendant's counsel to make his record, the trial judge denied the motion.

When the jury verdict of guilty was returned, counsel for the defendant renewed his motion to voir dire the jury. The government opposed the motion. The trial court denied the renewed request stating:

> The Court will deny the request that it make individual inquiry based upon the fact that the Court has repeatedly admonished and instructed the jurors not to read or listen to anything contained in the news media with regard to this case.
>
> And after each recess, it has inquired of the jury panel as a whole whether anything might have occurred that would in any way influence their ability to continue to serve and no indications have been given by any of the jurors.
>
> The Court will not presume that they have in any way disregarded the Court's instructions not to read the news media, absent some indications to the contrary.

Record, supp. 1, vol. 4, at 1204.[2] Defendant later filed post-trial motions including a request for a new trial pursuant to Fed. R.Crim.P. 33. All post-trial motions were denied by the trial court and this appeal followed. Essentially, the defendant claims that a new trial is necessary because the trial court erred in expressly refusing to voir dire the jury on their exposure to the news article.

## II. STANDARD OF REVIEW

The district court's decision on a new trial motion is reviewed under an abuse of discretion standard. *See United States v. McIntyre*, 836 F.2d 467, 472 (10th Cir.1987). In addition, the standard of review for the trial court's treatment of allegations of jury bias is abuse of discretion. "In responding to allegations of juror bias that arise during a trial, the trial court's decision as to how to proceed will not be reversed except for an abuse of discretion." *United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir.1986). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate

court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).

## III. RIGHT TO VOIR DIRE THE JURY REGARDING PREJUDICE

■ Defendant claims that the denial of his motion to voir dire the jurors individually constitutes reversible error and a new trial should be granted as a matter of law. We agree with the defendant that the article containing information concerning a prior plea agreement signed by Mr. Thompson was highly prejudicial. After the publication of the prejudicial information, the trial court's questions to the jurors were:

> Let me inquire, before you begin your deliberations, has anything occurred during the weekend that would in any way affect your ability to continue to serve as fair and impartial jurors in this case? ... Is there any matter that you would wish to call to the Court's attention as perhaps bearing upon your ability to continue to serve as fair and impartial jurors?

Record, supp. 1, vol. 4, at 1202. Under the circumstances of the prejudicial article being called to the court's attention and the allegations that several jurors were previously observed reading the Daily Oklahoman, we conclude that the trial court's general inquiry as to prejudice was not sufficient to satisfy counsel's reasonable request that the jury be asked specifically about the newspaper story. At a minimum the court had a duty to ask whether the jurors had read the article concerning this case.

The facts of this case are essentially indistinguishable from a prior case by this court that we find controlling. In *Mares v. United States*, 383 F.2d 805 (10th Cir.1967), *cert. denied*, 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969), a newspaper article printed under a bold headline concerning

---

**2.** Everything said to the jury relating to this subject together with the time it was said is

contained in the Appendix attached to this opinion.

defendant's withdrawn plea of guilty and a confession which had been excluded was published during a trial in which there was no sequestration of jurors. Upon learning of the article, defense counsel called the article immediately to the attention of the court and moved for a mistrial. The court denied the motion. Defense counsel again requested a mistrial and a questioning of the jury concerning their knowledge of the article once the guilty verdict was returned. The court refused both motions. On appeal the government argued that the jurors were carefully admonished on their responsibility to refrain from exposure to publicity occurring during the trial. Nevertheless, we concluded "that the failure of the trial court to ascertain whether any of the jurors had been exposed to the prejudicial article makes a new trial imperative." *Mares,* 383 F.2d at 809.

The facts of *Mares* are nearly identical to the present case. In both cases a newspaper article containing prejudicial information that had been excluded from the trial was published during the trial while the jurors were not sequestered. In *Mares* the article was preceded by a bold headline, but there was no evidence that any juror had actually read the newspaper. In the present case the article was preceded by a headline, appeared on the front page of the business section, and there was some evidence that the jurors may have been exposed to it. In both cases the judge refused to question the jurors concerning their knowledge of the articles. The fact that the article in *Mares* included a withdrawn guilty plea *and* a confession—while the article in this case discussed only a withdrawn guilty plea—goes only to the degree of prejudice, not necessarily to the requirement for voir dire. We have already concluded that the article in this case was extremely prejudicial. Thus we hold, in accordance with *Mares,* that the failure of the trial judge to inquire of the jurors concerning their knowledge of the article was an abuse of discretion.

Other cases relied on by the government are distinguishable. In *United States v. Bradshaw,* 787 F.2d 1385 (10th Cir.1986), we upheld a trial court's refusal to conduct an evidentiary hearing to inquire about the facts behind a relationship between a juror and two government witnesses. However, *Bradshaw* did not involve highly prejudicial evidence provided to a juror during trial. *Bradshaw* involved information that could have, and probably should have, been discovered and discussed during voir dire. The test in such a case is more lenient than in the case of prejudicial information which may have been received by the jurors during trial.

The government urges us to apply *United States v. Greschner,* 802 F.2d 373 (10th Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987), where we refused to reverse a trial judge who held that an evidentiary hearing was not necessary under facts very similar to the present case. In *Greschner,* a newspaper article containing prejudicial information, including the criminal records of the defendants, was published during trial. The trial court refused to grant a mistrial or to voir dire the jury concerning the article. We affirmed. The important factual difference between *Greschner* and this case, as well as *Mares,* is that in *Greschner* the matters contained in the newspaper article had already been admitted into evidence. In fact, the *Greschner* court explicitly distinguished *Mares* on this ground. *Id.* at 380–81 & n. 6.

In *Greschner* we stated that "we will presume that jurors remain 'true to their oath and ... conscientiously observe the instructions and admonitions of the court'" absent evidence to the contrary. *Greschner,* 802 F.2d at 381 (citations omitted). In addition to the factual differences between this case and *Greschner,* we note that we cited the same principle outlined in *Greschner* in our *Mares* opinion. *Mares,* 383 F.2d at 808–09. However, in *Mares* we concluded that "[t]he nature of the article was such that the trial court should have immediately ascertained whether any jurors had been exposed to it." *Id.* at 809. In the present case and in *Mares,* the reason for the lack of specific evidence concerning the juror's connection with the newspaper article was the trial court's fail-

ure to question the jurors about their exposure. In this case, defendant's motion to voir dire the jury contained allegations that jurors were seen reading the same newspaper that eventually carried the article during the week of trial. While the jurors had not been forbidden to read all newspapers—only accounts of the trial—here the reading of the same paper and the highly prejudicial nature of the article make the case for specific voir dire of the jury even stronger than the holding in *Mares*. At a minimum the trial court should have inquired generally whether any jurors read the article about this trial which was published during the weekend recess.

Finally, we note that our holding is supported by our recent case, *United States v. Hornung*, 848 F.2d 1040 (10th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989). In *Hornung*, we explained that "[w]hen a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of the prejudice, if any, to the defendant." *Id.* at 1045 (citations omitted). Thus, we hold that on the facts of this case, where general newspaper reading was observed and information contained in a newspaper article was highly prejudicial, it was an abuse of discretion not to inquire whether any jurors were exposed to the article. In light of this error, we must presume that the jurors actually read the article and that it constituted prejudice.

In a similar situation we presumed in *Mares* that at least one person was aware of the information in the article, and we concluded that a new trial must be held because of the lack of an evidentiary hearing. *Mares*, 383 F.2d at 809. The article in *Mares* contained information about the defendant's withdrawn plea of guilty and a prior confession that had been excluded by the trial court. These two pieces of information went straight to the issue of guilt, that was the question before the jury. Although the *Mares* court did not discuss the actual impact of this information on the jury, given the nature of the article it would have been impossible to hold that it

was beyond a reasonable doubt that the information did not contribute to the verdict.

As in *Mares*, the information in the article in this case was highly prejudicial and concerned the issue of guilt—the only question before the jury. In this case, a four-column article containing accurate factual information concerning the trial proceedings was headlined in bold lettering by the language "Son Says He Made Payments for Father." On the previous day Mr. Thompson's son had testified before the jury. The article also contained a reference to Mr. Thompson's prior plea agreement. The entire sentence reads: "Dan Thompson's attorney, Stephen Jones of Enid, told U.S. District Judge Lee R. West on Thursday that the minister and his son had both signed agreements to plead guilty in the case last year while being represented by another attorney." Saturday Oklahoman & Times, March 4, 1989, at 23, col. 2. We hold that under the facts of this case it was an abuse of discretion for the trial court not to voir dire the jury concerning the challenged article.

## IV. HARMLESS ERROR ANALYSIS

■ We next briefly consider whether the trial court's error was harmless. Our recent case, *United States v. Hornung*, 848 F.2d 1040 (10th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989), clearly outlines the harmless error doctrine for improper jury contacts. In *Hornung* we held that once a presumption of prejudice arises "the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* at 1044 (citing *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954)). We further held: "The court 'should assess the "possibility of prejudice" by reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware.'" *Hornung*, 848 F.2d at 1045 (citing *United States v. Weiss*, 752 F.2d 777, 783 (2nd

Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985)). In applying harmless error analysis, we must ask ourselves whether we can "declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Specifically, the Supreme Court has held as a general rule that an error is harmless if the beneficiary of the error can prove beyond a reasonable doubt that it did not contribute to the verdict. *Id.*

In order to convict defendant of the crimes charged in the indictment in this case, the government was required to prove beyond a reasonable doubt that defendant did not make any down payments or earnest money deposits on the properties involved as required by government regulations. Record, supp. 1, vol. 1, at 131–32. The government stated that their "evidence will prove beyond a reasonable doubt that no such [down] payments were made by Mr. Thompson." *Id.* at 143. However, at trial the defendant's son testified that he paid the down payments and the earnest money deposits for defendant, through a jointly held corporation, on all the properties named in the indictment. Record, supp. 1, vol. 4, at 1097. Defendant testified that he was informed his son had taken care of the down payment and earnest money. *Id.* at 1104–05. The remaining evidence of guilt produced by the government is not so overwhelming as to make defendant's testimony inherently unbelievable. Thus, it was the jury's province to weigh the credibility of the evidence and testimony. After reviewing the record, we cannot find that the government proved beyond a reasonable doubt that the jury's presumed knowledge of the prior plea of guilty did not enter into the jury's evaluation of the conflicting testimony. Thus, the government has not proved beyond a reasonable doubt that the newspaper article did not contribute to the verdict.

## V. CONCLUSION

We conclude that the trial court abused its discretion in not inquiring of the jury, upon request, to determine the jury's exposure to a highly prejudicial newspaper article. Because we do not find the error to be harmless, we must REVERSE and REMAND for a new trial.

## APPENDIX

### TRIAL COURT'S RECORDED ADMONITIONS TO THE JURY

I. Monday, February 27, 1989

*Jury Sworn*

"Certainly you should not permit anyone to discuss it (the case) with you or in your presence, and that includes your other fellow jurors. Don't discuss this case, even among yourselves, until you retire to the jury room at the completion of the case to begin your deliberations.

Don't read or listen to anything in the news media about this case...." Record, supp. 1, vol. 1, at 126–27.

*Pre–Recess*

"I want to remind you again of my previous admonition that you are not to discuss this case, even among yourselves. You are not to permit anyone to discuss it with you or in your presence. If anyone attempts to do so, please report that, upon your return to the courtroom, to me." Record, supp. 1, vol. 1, at 153.

*Pre–Recess*

"I remind you again of my previous admonition not to discuss this case." Record, supp. 1, vol. 1, at 204.

*Closing*

"I will remind you again of my previous admonitions that you should not discuss this case with anyone. Don't read or listen to anything that might be contained in the media or television with regard to this matter, or on the radio.

If there's anything in the newspaper, your family can retain that, if they wish to do so, until after this trial is over and then you can read about whatever comments there are. But don't discuss it with your family members; don't discuss it among yourselves." Record, supp. 1, vol. 1, at 270–71.

## II. Tuesday, February 28, 1989

*Opening*

"May I inquire if anything occurred during the recess that would prevent you from continuing to serve as fair and impartial jurors in this case?" (No response from the jury.) Record, supp. 1, vol. 2, at 272.

*Pre–Recess*

"I remind you of my previous admonitions." Record, supp. 1, vol. 2, at 332.

*Pre–Recess*

"I remind you not to discuss this case and I also remind you of my previous admonitions." Record, supp. 1, vol. 2, at 393.

*Pre–Recess*

"I remind you of my previous admonitions not to discuss the case." Record, supp. 1, vol. 2, at 445.

*Closing*

"I remind you of my previous admonitions not to discuss the case." Record, supp. 1, vol. 2, at 525.

## III. Wednesday, March 1, 1989

*Opening*

"May I inquire if anything occurred during the recess that would prevent any of you from serving as a fair and impartial juror?

Have you read or heard anything in the news media with regard to this matter during the recess?" (No response from the jury). Record, supp. 1, vol. 3, at 532.

*Pre–Recess*

"Ladies and gentlemen of the jury, I remind you of my previous admonition not to discuss this case." Record, supp. 1, vol. 3, at 594.

*Pre–Recess*

"Ladies and gentlemen, I want to remind you of my previous admonition not to discuss this case; not to read or listen to any reports with regard to this case, except what you hear in the courtroom." Record, supp. 1, vol. 3, at 644.

*Post–Recess*

"May I inquire if anything occurred during the recess that would prevent any of you from continuing to serve as fair and impartial jurors in this case?" (No response from jurors). Record, supp. 1, vol. 3, at 644.

*Pre–Recess*

"I will remind you of you [sic] my previous admonition not to discuss the case." Record, supp. 1, vol. 3, at 709.

*Closing*

"I again remind you of my previous admonition not to discuss the case." Record, supp. 1, vol. 3, at 800.

## IV. Thursday, March 2, 1989

*Opening*

"May I inquire if anything occurred during the recess, did you read or hear anything about this case from anyone outside the courtroom that would in any way impair or influence your ability to be a fair and impartial juror in this case?" (No response from the jury.) Record, supp. 1, vol. 4, at 808.

*Pre–Recess*

"I will remind you of my previous admonitions not to discuss the case." Record, supp. 1, vol. 4, at 874.

*Pre–Recess*

"I'll remind you of my previous admonition not to discuss the case." Record, supp. 1, vol. 4, at 907.

*Post–Recess*

"May I inquire if anything occurred which you observed or read or heard of that would in any way impact or affect your ability to continue to serve as fair and impartial jurors in this case during the recess?

Do any of you wish to call anything to the Court's attention in that regard?" (No response from the jury.) Record, supp. 1, vol. 4, at 938–40.

*Closing*

"I remind you, again, of my previous admonition not to discuss this case...." Record, supp. 1, vol. 4, at 1027–28.

V. Friday, March 3, 1989

*Opening*

"May I inquire if anything occurred during the recess which would in any way affect or influence your ability to continue to serve as fair and impartial jurors in this case?

(No response from the jurors).

I gather not.

Have any of you read or heard anything with regard to the proceedings in this trial during the recess?

(No response from the jury).

I gather not." Record, supp. 1, vol. 4, at 1030.

*Pre–Recess*

"I remind you again of my previous admonitions not to discuss the case." Record, supp. 1, vol. 4, at 1135.

*Post–Recess*

"May I inquire if anything occurred during the recess that would prevent any of you from continuing to serve as fair and impartial jurors or that you wish to call to the Court's attention as bearing on your ability to serve as fair and impartial jurors?" (No response from the jury.) Record, supp. 1, vol. 4, at 1136.

*Pre–Recess*

"I'll remind you of my previous admonition not to discuss the case." Record, supp. 1, vol. 4, at 1194.

VI. Monday, March 6, 1989

*Pre-deliberation*

"Let me inquire, before you being your deliberations, has anything occurred during the weekend that would in any way affect your ability to continue to serve as fair and impartial jurors in this case?

(No response from the jury.)

Is there any matter that you would wish to call to the Court's attention as perhaps bearing upon your ability to continue to serve as fair and impartial jurors?"

(No response from the jury.) Record, supp. 1, vol. 4, at 1202.

### ORDER ON REHEARING

Oct. 10, 1990.

PER CURIAM.

After considering appellee's petition for rehearing and the response of appellant, the court is persuaded that it should modify its mandate.

We believe that, notwithstanding the passage of time, if the jurors are available for the court to conduct an examination of those known to be exposed to the paper in general and enough of the others to make a fair determination of whether any of the jurors read the offending article, it should be given an opportunity to do so. The fact of reading such an article during deliberations in this case is sufficiently specific that we do not believe answers to specific questions about that fact would be too unreliable for the trial court to judge. We do not believe that the passage of time makes it any more likely that a juror deliberately would answer falsely than if the inquiry had been timely made when requested.

If the trial court, after judging all the responses, determines that the jurors all deny reading the article and further judges that the answers are reliable, the conviction shall be affirmed. If, on the other hand, the court determines that it is unable to elicit reliable responses on the matter or that one or more jurors in fact did read the article, it shall so find and grant a new trial.

As here modified, our opinion and judgment is reaffirmed. The mandate of this order shall issue forthwith.