**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Robert Charles DAVIS, Defendant–
Appellant.**

**Nos. 93–4192, 94–4147.**

United States Court of Appeals,
Tenth Circuit.

July 26, 1995.

G. Fred Metos (Stephen R. McCaughey, with him on the brief), Salt Lake City, UT, for defendant-appellant.

Stanley H. Olsen (Scott M. Matheson, Jr., U.S. Atty., and Barbara Bearnson, Asst. U.S. Atty., with him on the brief), Asst. U.S. Atty., Salt Lake City, UT, for plaintiff-appellee.

Before TACHA, BRORBY and HENRY, Circuit Judges.

BRORBY, Circuit Judge.

Defendant–Appellant Dr. Robert Charles Davis appeals his convictions for filing false claims with the United States and for mail fraud as well as the district court's order of restitution. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm in part and remand in part.

## BACKGROUND

A federal grand jury for the District of Utah issued a forty-one count indictment against Dr. Davis, a medical doctor, charging him with filing false claims and mail fraud in violation of 18 U.S.C. § 287 and 18 U.S.C. § 1341, respectively. The government's theory at trial regarding the false claims charges related to bills Dr. Davis sent to the Medicaid program for reimbursement for work performed after he had been suspended from that program. Those bills were submitted under the names of other doctors. The mail fraud charges alleged Dr. Davis had engaged in a scheme to defraud patients by utilizing unlawful billing practices, and that he furthered this scheme with the use of the United States mails.

Dr. Davis was convicted on thirty-three counts, and he was thereafter sentenced to fifty-six months imprisonment and three years of supervised release, along with a $50,000 fine. Pursuant to 18 U.S.C. §§ 3663–3664, the district court also ordered him to pay approximately $158,000.00 in restitution to his various victims.

Dr. Davis then filed a motion for a new trial asserting, *inter alia,* the district court erred in refusing to hold a hearing to determine if any jurors failed to disclose pertinent information during voir dire and to deter-

mine if any jurors were improperly exposed to extraneous prejudicial information during the trial. The district court denied the motion, concluding it "rest[ed] on wisps of smoke that disappear in the light of reason."

On appeal, Dr. Davis argues the district court erred in denying his motion for a new trial, relying primarily on his two claims of juror misconduct. He also asserts the district court erred in admitting habit evidence pursuant to Fed.R.Evid. 406 and in prohibiting him from offering evidence to rebut the government's habit evidence. Finally, he alleges the district court erred in using a formula to calculate the amount of restitution he should pay. We address each of these claims in turn.

## DISCUSSION

### I.

■ Dr. Davis' first argument relates to two of the jurors' alleged failure to provide candid responses to questions posed during voir dire. *See, e.g., McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 849–50, 78 L.Ed.2d 663 (1984) ("We hold that to obtain a new trial in such a situation [in a civil case], a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause."); *United States v. Cattle King Packing Co.,* 793 F.2d 232, 243 (10th Cir.) (applying the two-part *McDonough* test in a criminal case), *cert. denied,* 479 U.S. 985, 107 S.Ct. 573, 93 L.Ed.2d 577 (1986). Specifically, he contends one juror failed to disclose that the juror's grandson was a patient of Dr. Davis and that the grandson owed Dr. Davis money for services rendered. He also contends a different juror failed to disclose knowledge of accounting and medical billing procedures. Deficiencies with the record on appeal, however, preclude us from reaching the merits of this claim.

■ The appellant, as the party claiming the district court erred, bears the "responsibility to order and provide all portions of the transcript necessary to give the court of appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues raised on appeal." 10th Cir.R. 10.1.1; *see also United States v. Vasquez,* 985 F.2d 491, 495 (10th Cir.1993) ("The appellant is responsible for insuring that all materials on which he seeks to rely are part of the record on appeal."). "When the appellant asserts that his conviction should be reversed because of a particular error, and the record does not permit ... us to evaluate the claim, we will generally refuse to consider it." *Vasquez,* 985 F.2d at 495 (citing Tenth Circuit cases).

In this case, as in *Vasquez,* relevant portions of the transcript of the trial proceedings are not part of the record on appeal. "In the absence of a transcript ... the Court of Appeals will not review an issue, even for plain error." *Vasquez,* 985 F.2d at 495 This rule is grounded in the impracticalities of attempting to conduct meaningful appellate review of fact-intensive issues in the absence of a trial transcript. Without the transcript, we simply cannot substantiate the representations in the briefs regarding what questions were posed during voir dire and what the jurors' answers were. As a result, we cannot determine whether Dr. Davis has in fact made the requisite showing required by *McDonough.*

Furthermore, the failure to include the appropriate transcripts in the record on appeal constitutes a violation of 10th Cir.R. 10.1.1, which states "[t]ranscripts should omit the examination of the jurors *unless specifically drawn into issue on appeal.*" (Emphasis added). Thus, when the examination of jurors *is* an issue on appeal, the portion of the transcript containing the examination of the jurors must be included in the record on appeal. Due to these deficiencies with the record on appeal, "we must defer to the trial court's decisions." *Moore v. Subaru of America,* 891 F.2d 1445, 1448 (10th Cir.1989). Therefore, we affirm that portion of the district court's order denying relief on the basis of the jurors' alleged failure to disclose information during voir dire.

■ Similarly, Dr. Davis' second and third claims of error, which relate to various evidentiary rulings by the district court, are

also unreviewable on appeal because of the failure to include the relevant portions of the trial transcript in the record on appeal. We have stated "[t]he failure to file a transcript ... precludes review of the trial court's evidentiary rulings. Challenges to the admission of evidence will not be considered by the Court of Appeals in the absence of a record containing those portions of the transcript on which the appellant relies." *Vasquez*, 985 F.2d at 495.

Moreover, the failure to provide the trial transcript runs afoul of 10th Cir.R. 28.2(d). That rule, which applies to any "act or ruling for which a party must record an objection to preserve the right to appeal," requires "a statement as to where a proper objection and the court's ruling thereon may be found in the record." 10th Cir.R. 28.2(d). Without the relevant portions of the trial transcript, we have no way of knowing whether the issue was even preserved for appellate review.[1] Because we do not have the portions of the transcript demonstrating where a proper, contemporaneous objection was made, we cannot, and will not, address these issues on appeal, and we therefore affirm the district court's evidentiary rulings.

## II.

Dr. Davis next asserts several jurors were improperly exposed to extraneous prejudicial information during the trial. In support of his motion for a new trial on this ground, he submitted an affidavit from a "trial research and jury consultant" who conducted a post-verdict interview with several of the jurors in this case. The relevant portion of the affidavit with respect to this claim is a statement by the affiant that one juror told her "[t]here was somebody in the courtroom who was drawing. A lot of jurors muted the TV to

see who was drawn." Because of the presence of the sketch artist, several jurors allegedly watched television news reports to see who had been drawn, although they did so with the sound of the television muted. It is undisputed that this behavior directly contravened the district court's admonitions to the jurors regarding their duty to avoid any out-of-court publicity relative to the trial.

Dr. Davis asserts the district court erred by refusing to order a new trial based on this conduct by the jurors. He further contends these broadcasts were prejudicial because of the bulletins and statements accompanying the broadcasts, which contained information that was not otherwise admissible at trial.[2]

"We review the denial of a motion for a new trial based upon juror misconduct for an abuse of discretion." *United States v. Simpson*, 950 F.2d 1519, 1521 (10th Cir.1991) (citations and internal quotations omitted); *United States v. Thompson*, 908 F.2d 648, 650 (10th Cir.1990). Before reaching the merits of this issue, we must first determine whether Dr. Davis was entitled to a hearing on this claim. We conclude the district court did not abuse its discretion in denying the request for a hearing.

## A.

■ While a juror "may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention," a juror "may not testify as to ... the effect of anything ... concerning the juror's mental processes in connection therewith." Fed.R.Evid. 606(b). *See generally Tanner v. United States*, 483 U.S. 107, 117–27, 107 S.Ct. 2739, 2745–51, 97 L.Ed.2d 90 (1987) (discussing the common-law history

---

1. The present case provides an illustrative example of the rationale behind Rule 28.2(d). The government contends these evidentiary issues were not even preserved for appellate review while Dr. Davis claims a satisfactory objection was made before the district court. In the absence of compliance with Rule 28.2(d), we cannot verify these contentions one way or the other. Because it is the appellant's burden to create an adequate record, that party bears the consequences of failing to provide a complete record on appeal.

2. Some of the bulletins accompanying the broadcasts stated "Pleaded No Contest to Medical Fraud," "License Suspended for Three Months," "Insurance Fraud," and "Sexual Misconduct." None of this evidence was admitted at trial. *Cf. United States v. Greschner*, 802 F.2d 373, 380–81 (10th Cir.1986) (holding that while jurors were improperly exposed to a newspaper article, the contents of the article "had already been admitted in evidence"), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987).

of Rule 606(b) and the policies underlying it). As we observed in *Simpson*, the dichotomy established by Rule 606(b) permits a juror to testify (either literally or by way of affidavit) on the question of *"whether"* any extraneous prejudicial information was improperly brought to bear upon a juror ... [but] a juror may not testify as to the *effect* the outside information had upon the juror." *Simpson*, 950 F.2d at 1521 (emphasis in original); *see also Mattox v. United States*, 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892) (recognizing a distinction between affidavits bearing on "the motives and influences" of the jurors, which are inadmissible to impeach the verdict, and affidavits bearing on the "existence of any extraneous influence," which are admissible).

■ In *Simpson*, as in this case, the defendant requested a hearing on his claim of juror misconduct, but the district court denied the request. On appeal, we affirmed this ruling, concluding that under Rule 606(b), "it would have been an exercise in futility for the trial court to conduct an evidentiary hearing." *Simpson*, 950 F.2d at 1521. Once the fact of potential misconduct was brought to the district court's attention, we concluded further questioning of the juror at a hearing as to the effect of that misconduct was precluded by Rule 606(b). *Id.; see also United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir.1988) (under Rule 606(b), questioning of a juror who has been exposed to extraneous information "is limited to the circumstances and nature of the improper contact" and questions bearing on the "subjective effect of the contact on the juror's decision-making" are prohibited), *cert. denied*, 489 U.S. 1069, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989). In accordance with *Simpson*, and for the reasons set forth below, we conclude it was not an abuse of discretion to deny the request for a hearing in this case.

We acknowledge our prior statement that the "proper remedy" under these circumstances is for the district court to hold a hearing. *See Hornung*, 848 F.2d at 1045. But while a hearing might be prudent or otherwise appropriate, we have never held it was absolutely mandatory, and we decline to

so hold today. *Cf. Brecheen v. Reynolds*, 41 F.3d 1343, 1362 (10th Cir.1994) ("[T]here is no absolute right to an evidentiary hearing in every case involving a claim of ineffective assistance of counsel."), *cert. denied,* —— U.S. ——, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995).

■ In reviewing allegations that a juror was improperly exposed to extraneous information, the district judge who presided over the trial is "uniquely able" to assess the relative severity of the allegations. *See Mayhue v. St. Francis Hosp. of Wichita, Inc.*, 969 F.2d 919, 922 (10th Cir.1992). Because the district judge is in the best position to determine whether a hearing is necessary to evaluate such claims, the district judge should make the initial determination of whether a hearing would be of assistance to it in resolving this claim. Furthermore, we see no principled reason to treat requests for a hearing concerning this type of allegation differently from similar situations where we have held that the district judges have the discretion to grant or deny a hearing. We therefore conclude the decision whether to grant or deny a hearing on a claim that a juror was improperly exposed to extraneous information is vested in the broad discretion of the district courts, and we will review the denial of a request for such a hearing only for an abuse of discretion. *See, e.g., Cramer v. United States*, 47 F.3d 379, 382 (10th Cir.1995) (" 'The decision to rely upon affidavits and the record of a case rather than conduct an evidentiary hearing on a fee petition is ... reviewed for an abuse of discretion.' ") (quoting *Hamner v. Rios*, 769 F.2d 1404, 1406 (9th Cir.1985)); *accord United States v. Whalen*, 976 F.2d 1346, 1348 (10th Cir.1992) (denial of request for an evidentiary hearing in a § 2255 proceeding reviewed for an abuse of discretion); *United States v. Gines*, 964 F.2d 972, 977 (10th Cir.1992) ("The standard of review for denial of an evidentiary hearing is abuse of discretion."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1023, 122 L.Ed.2d 169 (1993).

Applying these principles here, we conclude the district court did not abuse its discretion in denying Dr. Davis' request for a hearing. The affidavit attached to the mo-

tion for a new trial provided the district court with notice of potential juror misconduct in this case and the nature of the alleged improper contact (*i.e.,* exposure to extraneous information). Notice to the court of that concededly improper conduct by the juror or jurors was entirely proper under Rule 606(b), and it was sufficient in this case to trigger an analysis by the district court of the merits *vel non* of the issue. At that point, however, a hearing to examine jurors to determine if they were exposed to such information would, as we observed in *Simpson,* simply be redundant and unnecessary. Furthermore, a hearing on this issue could not be used to delve into the possible subjective effect any exposure might have had on the jurors' deliberations because of the prohibition in Rule 606(b). Accordingly, we find no abuse of discretion in the district court's decision to deny the defendant's request for a hearing.

### B.

Although the district court did not err in refusing to hold an evidentiary hearing, this does not end the analysis. Regardless of whether a hearing is held, the district court must still determine whether any exposure to the extraneous information impermissibly tainted the jurors so as to warrant a new trial.[3]

In addressing the possible impact on the jurors of any exposure to extraneous material, the district court first noted that the foundation for Dr. Davis' motion was "based almost entirely on inadmissible hearsay," and, in several instances, constituted multiple hearsay. Because of those concerns, the court indicated it "seriously considered" denying the motion on the ground that it was not supported by "any competent evidence." But due to "the seriousness of the rights at issue . . . and in an abundance of caution,"

the court declined to rule the affidavit was inadmissible.

As a threshold matter, it cannot be doubted that the district court had discretion to refuse to accept the contents of the affidavit, which was executed by a hired jury consultant, because it contained the hearsay statements by the consultant as to what she was told by the jurors. Unlike cases where a party provides the affidavit of the juror directly (after requesting permission from the district judge), *e.g., Hornung,* 848 F.2d at 1043, the affidavit here is from a jury consultant, who was hired by the defense for the purpose of reaching a result favorable to the defendant. Under these circumstances, the district court's concerns over the veracity of the contents of this affidavit cannot be doubted. If the district court had refused to accept this affidavit because of these concerns over its contents, we would review that decision for an abuse of discretion. *See United States v. Jones,* 44 F.3d 860, 873 (10th Cir. 1995). But, while the district judge expressed concerns over the reliability of the allegations in the affidavit, it never ruled the affidavit was inadmissible. Instead, it addressed the merits of this claim after expressly "assuming the accuracy of th[e] information [contained in the affidavit]." On the basis of that assumption, the court concluded the allegations of misconduct were not sufficiently prejudicial as compared to other cases,[4] and that no "further inquiry or a new trial" was warranted. We conclude, however, that once the district court assumed the veracity of the affidavit, the remainder of its analysis did not comport with our existing case law.

■ "The law in the Tenth Circuit is clear. A rebuttable presumption of prejudice arises whenever a jury is exposed to external information in contravention of a district court's

---

**3.** We have previously recognized the "special problem" of determining the prejudicial impact of a particular extraneous influence in light of Rule 606(b)'s prohibition against receiving testimony from the jurors as to the subjective effects of such influences. *See United States v. Scisum,* 32 F.3d 1479, 1483 (10th Cir.1994) (quoting *Mayhue,* 969 F.2d at 923). While we remain sensitive to this problem, it cannot and does not relieve the district courts of their obligation to

make a determination of whether relief is warranted because of the exposure.

**4.** *See, e.g., Mayhue,* 969 F.2d at 922–26 (jurors improperly considered dictionary definitions of certain terms after trial court had excluded the dictionary as evidence); *Thompson,* 908 F.2d at 650–53 (jurors seen reading newspaper article containing prejudicial information about the defendant).

instructions." *Mayhue,* 969 F.2d at 922 (citing *Hornung,* 848 F.2d at 1044–45). "The presumption of prejudice 'is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.'" *Hornung,* 848 F.2d at 1044 (quoting *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954)). In order to conclude the exposure was harmless, in the context of this direct appeal, "we must ask ourselves whether we can 'declare a belief that [the error] was harmless beyond a reasonable doubt.'" *Thompson,* 908 F.2d at 653 (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). We have recognized that the most common means of demonstrating the harmlessness of an extraneous contact is to show the existence of "overwhelming evidence of [the] defendant's guilt." *Hornung,* 848 F.2d at 1045; *see also Thompson,* 908 F.2d at 653.

■ In this case, the district court concluded Dr. Davis failed to demonstrate sufficient prejudice from the jurors' exposure to this information to warrant relief. But under *Mayhue,* Dr. Davis was entitled to rely on a presumption of prejudice which, in the absence of any countervailing evidence of harmlessness offered by the government, would be sufficient to support post-trial relief. Because the district court's analysis did not afford Dr. Davis the presumption of prejudice recognized by our cases, and because the record on appeal does not permit us to make an independent determination of whether the jury's exposure to this material was harmless, a remand is necessary to provide the district court with an opportunity to make appropriate findings, consistent with

the framework enunciated above, for analyzing this issue.[5]

## III.

■ Dr. Davis' final claim on appeal relates to the district court's restitution order. He phrases the issue on appeal as "whether a formula may be used to determine restitution," and he limits his argument to the legal issue of the propriety of using a formula, while expressly foregoing any challenge to the district court's factual findings or the application of the formula to those findings of fact.[6] Finding no error, we reject this claim.

"The determination of an appropriate restitution amount is by nature an inexact science." *United States v. Brewer,* 983 F.2d 181, 185 (10th Cir.) (citation and internal quotations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 2348, 124 L.Ed.2d 257 (1993). In cases like this, where the "precise amount" of restitution owed is "difficult to determine," U.S.S.G. § 5E1.1 "authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." U.S.S.G. § 5E1.1, comment. (backg'd.) This commentary to the sentencing guidelines, which must be given authoritative weight unless shown to be inconsistent with federal law or otherwise plainly erroneous, *see Stinson v. United States,* —— U.S. ——, —— – ——, 113 S.Ct. 1913, 1918–19, 123 L.Ed.2d 598 (1993); *United States v. Okane,* 52 F.3d 828, 833–34 n. 5 (10th Cir.1995), suggests that where the amount of restitution cannot easily be calculated, the touchstone inquiry is whether the amount of restitution ordered was "reasonable."

---

5. In so ruling, we do not mean to imply the district court must hold an evidentiary hearing on remand. To the contrary, we have already determined it was not an abuse of discretion to refuse to hold a hearing. Of course, we also do not seek to preclude the district court from holding a hearing if it believes a hearing would facilitate disposition of this matter. The decision of how to address this matter on remand is simply left to the district court in the first instance.

6. Because Dr. Davis does not challenge the district court's factual findings relative to the restitution order, we find his reliance on *United States v. Hill,* 798 F.2d 402 (10th Cir.1986) misplaced. In *Hill,* we concluded the record was "void of any factual determinations" by the district court other than a conclusory statement as to the total amount of restitution and on that basis, we remanded the case to the district court. *Id.* at 407. In this case, however, it is undisputed the district court made specific findings of fact as to how much restitution was owed to the victims, thereby distinguishing *Hill.*

Dr. Davis does not challenge the amount of restitution ordered by the court as unreasonable, nor has he cited any cases prohibiting reliance on a formula in calculating an appropriate restitution order. In fact, the Ninth Circuit has rejected the precise argument advanced here, namely, that reliance on a formula in calculating the amount of restitution is *per se* impermissible. *See United States v. Soderling,* 970 F.2d 529, 534 n. 11 (9th Cir.1992) ("[T]he restitution order entered by the district court is not unlawful because it used a formula ... to set the amount of restitution."), *cert. denied,* —— U.S. ——, 113 S.Ct. 2446, 124 L.Ed.2d 663 (1993). We agree with this statement, and accordingly, find no error in the district court's reliance on a formula in fashioning an appropriate restitution order.

## CONCLUSION

We **AFFIRM** the district court's order denying the motion for a new trial with respect to the voir dire issue and the two evidentiary matters, and we **AFFIRM** the order of restitution. We **REMAND** the case, however, to permit the district court to make appropriate findings on the question of whether the jurors' exposure to extraneous information was harmless.