**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 8, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

OCTAVIO JUAN SANCHEZ,

    Defendant - Appellant.

No. 22-6207
(D.C. No. 5:21-CR-00183-J-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

    A jury convicted Octavio Sanchez of being a felon in possession of a firearm. After the verdict, it came to light that the jury deliberated in a courtroom equipped with an active security camera. Concerned that the camera's presence may have improperly influenced the jury's deliberations, Sanchez moved for an evidentiary hearing and sought to question the jurors about whether they were aware of the camera, knew it was on, or discussed its presence during their deliberations. The district court denied the motion, and Sanchez appeals. Because we agree with Sanchez that the district court abused its discretion by failing to conduct an adequate

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

investigation into the alleged improper influence, we reverse and remand for further proceedings consistent with this order and judgment.

## Background

In July 2021, the government charged Sanchez with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Four months later, the case proceeded to a two-day jury trial. Because the trial occurred during the height of the COVID-19 pandemic, jury deliberations took place in a courtroom, rather than a designated jury-deliberation room, to allow for social distancing. The jury ultimately found Sanchez guilty.

After the verdict but before sentencing, Sanchez learned that at another recent criminal trial in the district, the jury deliberated in a courtroom equipped with a security camera, and a court security officer (CSO) used that camera to watch the deliberations. *See United States v. Nichols*, No. 22-6079, 2023 WL 5994479, at *3 (10th Cir. Sep. 15, 2023) (unpublished). Suspecting that the jury in his case also deliberated in a courtroom equipped with an active security camera, Sanchez moved for an evidentiary hearing to investigate the issue. The district court denied the motion without prejudice on the ground that it was "conclusory at best" because it cited no authority and gave "no indication as to what a hearing w[ould] achieve." R. vol. 1, 156.

Sanchez then filed a second motion for an evidentiary hearing that more thoroughly developed his position. In particular, Sanchez asserted that the presence of a camera during jury deliberations would violate "'the cardinal principle that the

2

deliberations of the jury shall remain private and secret'" and could create a "chilling effect" that stifled debate among the jurors. *Id.* at 159–60 (quoting *United States v. Olano*, 507 U.S. 725, 737 (1993)). Sanchez argued that a hearing was therefore necessary to determine whether a camera, if present, exerted an improper influence on the jury's deliberations. The parties then jointly moved for an order directing the United States Marshals Service to provide certain information about the jury deliberations, including whether the deliberations took place in a courtroom equipped with any cameras. The district court granted the joint motion.

In response, the Marshals Service confirmed that the jury deliberated in a courtroom equipped with an operating security camera. The Marshals Service further disclosed that the camera was located in the southeast corner of the courtroom; the camera recorded the jury deliberations and did not emit any light or noise; no microphones were on at the time; and the jurors deliberated near the counsel tables at the center of the courtroom.

After receiving this information, Sanchez sought authorization to ask each juror three questions: (1) whether they knew there was a camera in the courtroom during jury deliberations; (2) whether they knew that the camera was operating; and (3) whether they mentioned or discussed the camera's presence with anyone. Sanchez also suggested that these questions could be submitted to the jurors in writing rather than at an in-court evidentiary hearing. The district court denied Sanchez's request, concluding that his concerns about the camera were too speculative to justify "such a fishing expedition." *Id.* at 184. As a result, the district court found Sanchez's request

3

for an evidentiary hearing moot, noting that "[n]o party ha[d] indicated the existence of any [other] evidence that ha[d] not already been made available to the [c]ourt." *Id.* at 185.

At sentencing, the district court imposed a ten-year prison term and a three-year term of supervised release. Sanchez appeals.

**Analysis**

Sanchez argues that the district court erred in failing to adequately investigate whether the presence of the security camera during jury deliberations improperly influenced the jury and prejudiced Sanchez. The parties agree that our review is for abuse of discretion. *See J. Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986) (noting that we apply abuse-of-discretion standard in reviewing "a motion by a losing [party] to interview jurors"); *United States v. Scull*, 321 F.3d 1270, 1280 (10th Cir. 2003) (explaining that we "review for abuse of discretion the district court's decision to hold a hearing" or otherwise investigate possible improper external influence on jury).

The Sixth Amendment guarantees a criminal defendant the right to a trial "by an impartial jury." U.S. Const. amend. VI. This guarantee requires a jury to reach its verdict "based [solely] upon the evidence developed at the trial." *Turner v. Louisiana*, 379 U.S. 466, 472 (1965) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). "The integrity of jury proceedings must not be jeopardized by unauthorized invasions." *Remmer v. United States* (*Remmer I*), 347 U.S. 227, 229 (1954). Because the right to trial by an impartial jury is a cornerstone of our criminal justice system,

4

we "guard jealously the sanctity of the jury's right to operate as freely as possible from outside[,] unauthorized intrusions." *Remmer v. United States* (*Remmer II*), 350 U.S. 377, 382 (1956).

The district court has a "duty" to investigate the circumstances of any "genuine concerns" about outside influence on jury deliberations. *Stouffer v. Trammel*, 738 F.3d 1205, 1213–14 (10th Cir. 2013); *see also United States v. Bishawi*, 272 F.3d 458, 463 (7th Cir. 2001) ("A court faced with a post[]verdict question of jury prejudice is obligated to ascertain and examine the[] basic facts. To hold otherwise would undermine the integrity of the jury process." (citation omitted)). We ordinarily require the district court "to determine the circumstances of the improper contact [or other extraneous influence] and the extent of the prejudice, if any, to the defendant." *Stouffer*, 738 F.3d at 1214 (quoting *Scull*, 321 F.3d at 1280). That said, not every allegation of improper influence requires further investigation. For instance, investigation may be unnecessary "if the defendant provides only speculation that improper juror contact [or other influence] may have occurred" or "when there is no evidence any juror actually heard or saw" the alleged improper influence. *Id.* at 1214–15. But outside those "rare occasions" in which "it can be clearly established that [investigation] would not be useful or necessary," *United States v. McVeigh*, 153 F.3d 1166, 1186 (10th Cir. 1998), the district court must investigate when the defendant raises "genuine concerns" of improper influence, *Stouffer*, 738 F.3d at 1214.

Sanchez argues that the presence of a camera in the courtroom where the jury deliberated may have "exerted a 'chilling' effect" on their deliberations, creating genuine

5

concerns of improper influence and requiring the district court to investigate. *Olano*, 507 U.S. at 739. The district court reasoned otherwise, determining that a camera that "did not emit noise or light and did not record audio" did not sufficiently risk chilling jury deliberations. R. vol. 1, 185. The government likens security cameras to sign-language interpreters, which "this television-age society has become so accustomed to seeing . . . that virtually all of us have come to view [them] as part of the background [rather] than as independent participants" who might inhibit discussion. *United States v. Dempsey*, 830 F.2d 1084, 1091 (10th Cir. 1987). Sanchez recognizes that security cameras "are ubiquitous in contemporary society." Aplt. Br. 12. But he does not assume their ubiquity renders them incapable of influencing a jury—a point with which we agree. Unlike a sign-language interpreter, whose purpose is to translate spoken language into signed language for individuals with hearing loss, a security camera's primary function is to surveil. And as Sanchez points out, if the jurors noticed the camera and "thought they were being watched, they likely thought they were being watched by court employees." Aplt. Br. 13. But to protect jury deliberations from improper influence, "juror[s] must feel free to exercise [their] functions without [a government official] or anyone else looking over [their] shoulder[s]." *Remmer I*, 347 U.S. at 229. We therefore agree with Sanchez that the presence of a camera during jury deliberations—even a camera that emitted no light or sound and did not record audio—could constitute an improper influence such that the district court had a duty to investigate the matter. *See Stouffer*, 738 F.3d at 1213–14.

6

Changing tacks, the government next contends that even if the district court had a duty to investigate, it satisfied that duty by ordering the Marshals Service to provide information about the camera. But as Sanchez argues, the information provided by the Marshals Service simply constituted the credible evidence of improper influence that triggered a need to further investigate. Indeed, although the Marshals Service confirmed the presence of an operating camera throughout the jury's deliberations, that confirmation reveals nothing about whether *the jurors* knew as much. And without knowing what the jurors knew, it is impossible to assess whether the camera could have improperly influenced their deliberations. Indeed, the government effectively concedes the importance of the jury's knowledge when it faults Sanchez for "fail[ing] to make—or even attempt[ing] to make—the threshold showing required (namely, that the jury was even aware of the camera or that the contact related to the case)." Aplee. Br. 21.

Nevertheless, the government insists that any further investigation into whether "the jury was even aware of the camera" would be futile because Sanchez merely wants to ask the jurors about the effect of the camera on the jury's deliberations, which Federal Rule of Evidence 606(b) forecloses. *Id.* Rule 606(b) generally prohibits a juror from testifying about "the effect of anything on that juror's vote" or "any juror's mental processes concerning the verdict." Fed. R. Evid. 606(b)(1). But the government mischaracterizes Sanchez's request. Sanchez argues only that the district court should have asked the three questions he proposed to the district court—that is, "whether the jurors were aware of the camera, knew it was on, and if so, whether they discussed [its] presence." Aplt. Br. 17. Those three questions do not relate to the camera's effect on the

7

jurors or their mental processes concerning the verdict. Instead, the questions simply inquire into whether "an outside influence was improperly brought to bear on any juror," which Rule 606(b) permits. Fed. R. Evid. 606(b)(2)(B); *see also Vigil v. Zavaras*, 298 F.3d 935, 941 (10th Cir. 2002) (noting that Rule 606(b) does not prohibit courts from considering "the degree to which the jury discussed and considered the extrinsic [influence]"). Thus, contrary to the government's argument, Rule 606(b) does not preclude the jurors from answering the questions Sanchez proposed below.

The government next invokes *United States v. Davis*, 60 F.3d 1479 (10th Cir. 1995), and *United States v. Simpson*, 950 F.2d 1519 (10th Cir. 1991), but neither case supports its position that further investigation would be futile here. In *Davis*, the district court refused to conduct an evidentiary hearing after discovering that several jurors watched television news reports about the trial in an effort to learn who a sketch artist had drawn during the proceedings. 60 F.3d at 1482. And in *Simpson*, the district court similarly declined a hearing after learning that at least one juror saw a codefendant in handcuffs and discussed it with other jurors, who all knew the codefendant was in jail. 950 F.2d at 1521. Finding no abuse of discretion in either case, we held that further investigation would have been futile because (1) the record already established that the jurors were exposed to the alleged improper influence; and (2) Rule 606(b) prohibits delving into the effect any improper influence might have had on the jurors' deliberations. *See Davis*, 60 F.3d at 1484–85; *Simpson*, 950 F.2d at 1521. But here, unlike in *Davis* and *Simpson*, the district court had no information about whether jurors were aware of the alleged external influence of the camera, its use during their

8

deliberations, or whether they discussed or considered its presence. Instead, the court knew only that a security camera was present and operating during the deliberations. So questioning the jurors (either in writing or at a hearing) could, in fact, produce material and admissible information not already before the district court—information that the government concedes is critical to establishing the required "threshold showing" of improper influence. Aplee. Br. 21.

For comparison, consider our recent unpublished decision in *Nichols*, 2023 WL 5994479.[1] There, the defendant unsuccessfully moved for a mistrial or, in the alternative, for a new trial, after discovering that the jury deliberated in a courtroom equipped with an operating security camera and that a CSO had watched the deliberations. *Id.* at *3. Challenging the denial of his motion on appeal, the defendant argued that the CSO's actions could have exerted a "chilling effect" on the jury's deliberations. *Id.* (quoting *Olano*, 507 U.S. at 739). We acknowledged "the seriousness of the issue" but noted that "[t]he record contain[ed] no information about whether the jurors were aware of the camera or its use during their deliberations." *Id.* And because the defendant cited no caselaw allowing a district court "to void a jury verdict based on intrusions into the sanctity of jury deliberations of which the jurors themselves were not aware," we found no abuse of discretion in the district court's decision to deny his motion. *Id.*

Here, Sanchez seeks to develop the record—a step the defendant in *Nichols* overlooked. And unlike the defendant in *Nichols*, Sanchez has not pursued a motion for a

---

[1] We discuss this unpublished case for its persuasive value. *See* 10th Cir. R. 32.1(A).

new trial. Instead, he expressly asked the district court to further investigate the matter and determine whether the jurors knew they were being monitored.[2] Indeed, "[w]e do not know from this record . . . what actually transpired," *Remmer I*, 347 U.S. at 229, and the only way to find out whether the jurors knew about the camera is to ask. Contrary to the district court's assessment, and under the circumstances of this case, doing so would not constitute a "a fishing expedition." R. vol. 1, 184. For these reasons, we hold that the district court abused its discretion by failing to conduct an adequate investigation into the camera's presence during jury deliberations.[3]

_____

[2] The government faults Sanchez for failing to move for a new trial and asserts that this failure should preclude him from "requesting relief related to a motion for new trial." Aplee. Br. 19. But because the parties agree that Sanchez had no basis to ask for a new trial without first establishing that the jurors knew about the camera, we reject the government's waiver argument.

[3] The parties raise two additional arguments, but both are premature at this stage. First, the parties dispute whether the district court should apply a presumption of prejudice on remand. *See Remmer I*, 347 U.S. at 229 (explaining that "any private communication, contact, or tampering[,] directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial" and that the government bears the burden to rebut such presumption). Sanchez suggests in his appellate brief that we direct the district court, on remand, to apply the presumption; the government counters that he is not entitled to it. But as Sanchez conceded at oral argument, consideration of whether a presumption of prejudice applies is premature without further factual development about the jurors' knowledge of the camera. Second, the government contends that remand is unnecessary because any improper influence on the jury was harmless in light of the overwhelming evidence against Sanchez. But our caselaw makes clear that harmlessness can be considered only after the district court "determin[es] the existence and extent of the prejudice" to the defendant, if any, which it has yet to do. *Stouffer*, 738 F.3d at 1218–19; *see also Davis*, 60 F.3d at 1485 (remanding for prejudice and harmlessness analyses despite finding no abuse of discretion in denying evidentiary hearing on improper influence). We leave it to the district court to consider these issues in the first instance, if appropriate, on remand.

**Conclusion**

The information provided by the Marshals Service confirming that a security camera recorded the jury deliberations constituted credible evidence of improper influence, which triggered the district court's duty to investigate. And we agree with Sanchez that the district court abused its discretion in declining to ask jurors the questions Sanchez proffered, which do not run afoul of Rule 606(b). We therefore reverse and remand for the district court to conduct further investigation by questioning the jurors—whether in person or in writing—to determine whether the camera's presence influenced the jury deliberations.

Entered for the Court

Nancy L. Moritz
Circuit Judge

*United States of America v. Octavio Juan Sanchez*, No. 22-6207
**BACHARACH**, J., concurring.

In this appeal, we must consider whether the district court should have asked the jurors three questions about the presence of a camera during their deliberations. In district court, the defendant had proposed the questions in a reply brief with only a sparse explanation of the reasons to ask these questions. With that sparse explanation, the district court had to consider how the answers

- might help assess the impact of the camera and

- might be used without intruding into jury secrecy.

The district court declined to ask the three additional questions.

On appeal, the defendant's counsel explains how these questions could help assess the potential impact on the deliberations. But the district court didn't have the benefit of this explanation. Without it, the district court had little reason to think that the three additional questions would have mattered. So if the government had urged us to affirm based on the defendant's sparse explanation in district court, I would probably have voted to affirm.

But we generally confine our review to the arguments presented by the government. *See United States v. Woodard*, 5 F.4th 1148, 1154 (10th Cir. 2021) ("In the best of circumstances, we consider it 'imprudent' to craft arguments sua sponte to affirm on alternate grounds."); *United States*

*v. Chavez*, 976 F.3d 1178, 1203 n.17 (10th Cir. 2020) ("As a jurisprudential matter, [crafting arguments for affirmance sua sponte and without the benefit of the parties' adversarial exchange] is imprudent . . . ."). So I don't think that we should rely sua sponte on the defendant's failure to tell the district court why the three additional questions would matter.

Instead, the panel properly focuses on the government's appellate arguments, which rest on speculation about how the defendant would use the information. Like the majority, I'm not persuaded by these arguments; I write separately only to note that we—unlike the district court—have the advantage of a persuasive explanation for the three additional questions.

## I.    The district court collected information about the camera that was present during the jury's deliberations.

This appeal grows out of a district court's efforts to conduct a trial for unlawful possession of a weapon. *See* 18 U.S.C. § 922(g)(1). The trial posed a problem, however, because a global pandemic was raging. Because of the pandemic, court officials tried to keep jurors a safe distance apart. But deliberation rooms were often too small to keep jurors apart.

Some courts adapted by moving juries to larger rooms when it was time to deliberate. For example, the district court arranged in this case for deliberations in the courtroom because it was big enough for the jurors to

keep their distance. Unfortunately, no one mentioned the camera that the marshals used for security.

The jury deliberated in the courtroom and found the defendant guilty. After the conviction, the defendant obtained new counsel, who knew that another jury had deliberated in a courtroom with a camera. So the new attorney requested an evidentiary hearing to determine whether any cameras had affected the jurors as they deliberated.

To aid the court's consideration of this request, the parties jointly asked the court to make the marshals service disclose whether cameras had been present, whether they were operational, where the cameras were, whether the cameras emitted light or noise while recording, whether the cameras recorded during the deliberations, whether any potential recordings of the deliberations had been saved, whether the courtroom contained any microphones, whether any of these microphones were operational, and where the jurors sat when deliberating.

The district court granted the joint motion, and the marshals disclosed four facts:

1.    A security camera was present in the corner of the courtroom.

2.    The camera recorded and saved the recording, but didn't emit light or noise while recording.

3.    During the deliberations, there were no microphones in the courtroom.

3

4. The jurors sat near the middle of the courtroom when they deliberated.

## II. In a reply brief, Mr. Sanchez sought permission to ask three more questions.

With this information, the court needed to decide whether to grant an evidentiary hearing. The government argued that an evidentiary hearing wasn't necessary based on the absence of prejudice. So the court invited input from the defendant through a reply brief. Defense counsel took advantage of this opportunity and used the reply brief to propose three more questions to each juror:

1. Did the juror know that there were cameras in the courtroom during the jury deliberations?

2. Did the juror know that a camera was transmitting video during the jury deliberations?

3. If the answer to either of the first two questions was *yes*, did the juror mention or discuss the presence of cameras with anyone?

The district court declined to ask these questions or to conduct an evidentiary hearing.

## III. The defendant gave the district court little reason to ask the three questions.

The defendant argues that the district court should have asked these additional questions. To address that argument, we apply the abuse-of-discretion standard. *See United States v. Davis*, 60 F.3d 1479, 1483 (10th Cir. 1995) ("[T]he decision whether to grant or deny a hearing on a claim

4

that a juror was improperly exposed to extraneous information is vested in the broad discretion of the district courts, and we will review the denial of a request for such a hearing only for an abuse of discretion."). Under this standard, we consider whether

- the district court's decision was arbitrary, capricious, whimsical, or manifestly unreasonable, or

- the court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

*United States v. Chapman*, 839 F.3d 1232, 1237 (10th Cir. 2016).

The court had to exercise its discretion based on the arguments presented. *See United States v. Herrera*, 51 F.4th 1226, 1277 (10th Cir. 2022) (stating that "we evaluate the district court's exercise of discretion based on the information presented at the time of the ruling"); *see also United States v. Sanchez*, 790 F.2d 245, 251 (2d Cir. 1986) ("Our review of the district judge's exercise of discretion . . . must be based on the relevant circumstances confronting the judge at the time of his ruling, without the benefit of hindsight."); *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982) (per curiam) ("We must evaluate the validity of the court's ruling in light of the information available to the trial judge at the time of his ruling."). And the district court had been told little about the reasons to ask the three questions. The defendant had said only that

- "the [g]overnment argue[d] that Mr. Sanchez 'ha[d] not provided any evidence that the jury was prejudiced during the deliberations'" and

5

- "[defense] counsel ha[d] been prohibited from approaching or speaking to jurors about Mr. Sanchez's case, and, as such, ha[d] been unable to provide any such information to the Court."

R. vol. 1, at 179–180.

Without an explanation for why the questions would matter, the court declined the attorney's request. The court already knew from the marshals that a camera was present. The issue was whether the presence of that camera would have affected the jurors in their deliberations, and the defendant didn't say how these questions would have mattered.

On appeal, defense counsel provides persuasive explanations on how the questions would have helped the district court assess prejudice. The majority properly credits these explanations, reasoning that

- a security camera's main function is surveillance,

- the jurors likely would have thought they were being watched if they had noticed the camera,

- the jurors must be free to deliberate without a government official watching them, and

- the presence of the camera could have chilled deliberations.

Maj. Order and Judgment at 6.

If the defendant had provided these explanations, the district court might have asked the additional questions. But the district court is a neutral arbiter, not an advocate. The court had to decide whether to ask the

6

three questions based on the defendant's explanation, and that explanation didn't include any of the arguments newly presented on appeal.

Given the failure to explain how the answers would have mattered, the district court had little reason to think that the three additional questions would have mattered. But the government doesn't defend the ruling on this basis. So the majority has properly restricted its review to the arguments presented by the parties. And based on the government's appellate arguments, I agree with the majority's decision to reverse and remand for further proceedings.